Clinton, J., filed concurring opinion in which Miller, J., joined.

Overstreet, J., filed dissenting opinion.

McCormick, P.J., and White, J., dissented.

**Deborah Kay CAWTHON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 1170–90.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 14, 1992.

---

Robert T. Baskett, Harry Louis Zimmermann, Dallas, for appellant.

Frank Long, Dist. Atty., and Alwin A. Smith, Asst. Dist. Atty., Sulphur Springs, Robert Huttash, State's Atty. and Matthew W. Paul, Asst. State's Atty., Austin, for the State.

OPINION DENYING STATE'S MOTION FOR REHEARING OF OPINION ON APPELLANT'S MOTION FOR REHEARING AFTER PETITION FOR DISCRETIONARY REVIEW REFUSED

MALONEY, Judge.

Our original opinion on appellant's motion for rehearing after petition for discretionary review refused is withdrawn and the following opinion is substituted. The State's motion for rehearing is denied.

A jury convicted appellant of possession with intent to deliver at least twenty-eight grams but not more than four hundred grams of amphetamine and assessed punishment at imprisonment for fifteen years. *See* TEX.REV.CIV.STAT.ANN. art. 4476–15, §§ 4.02(c)(3); 4.031(d)(1) (Vernon Supp. 1988).[1] The Twelfth Court of Appeals affirmed the conviction in an unpublished opinion. *Cawthon v. State*, No. 12–88–0032–CR (Tex.App.–Tyler, Aug. 24, 1990). On May 8, 1991, after originally refusing appellant's petition for discretionary review, we granted appellant's motion for

rehearing to determine whether the opinion of the Court of Appeals conflicts with decisions of this Court. *See* Tex.R.App.P. 200(c)(3). Appellant contends that the evidence is insufficient to prove the controlled substance weighed at least twenty-eight grams. We will reverse the judgment of the Court of Appeals.

The indictment alleged that on or about June 18, 1988, appellant "intentionally possess[ed] with intent to deliver a controlled substance, namely amphetamine, having an aggregate weight, including any adulterants and dilutants, of less than four hundred grams but at least twenty-eight grams."[2] Keith Prigden, a chemist with the Texas Department of Safety, testified at trial that the weight of the total substance was 128.76 grams. He also testified that of that substance twenty percent was amphetamine with the rest being adulterants and dilutants.[3] However, when asked about the adulterants or dilutants, Prigden responded that he "did not run a specific analysis to determine the adulterants or dilutants."

The Court of Appeals rejected appellant's argument that the State must prove that the unknown portion of the substance was an adulterant or dilutant as defined in *McGlothlin v. State*, 749 S.W.2d 856, 860 (Tex.Cr.App.1988) (adulterants and dilutants are "compounds, substances or solutions added to the controlled substance with the intent to increase the bulk of the product. Or, increase the quantity of the final product 'without affecting its activity.' ")[4]. Adhering to our holding in *McGlothlin*, the Court of Appeals defined an adulterant or dilutant as any material used or intended for use in cutting a con-

1. Now TEX. HEALTH & SAFETY CODE ANN. §§ 481.103(a)(3); 481.113(d)(1).

2. The jury charge mirrored the indictment. It authorized conviction upon the aggregate weight of the amphetamine including any adulterants and dilutants.

3. Twenty percent of 128.76 grams is 25.752 grams. The record is unclear as to whether his testimony as to "twenty percent" referred to volume, weight, or density. We assume without deciding that he meant twenty percent of gram-molecular weight, i.e., 25.752 grams.

4. We interpret the "or" in the sentence "Or, increase the quantity of the final product 'without affecting its activity' " to mean "in other words." The phrase "increase the quantity" is redundant of the phrase "increase the bulk." Therefore, an adulterant or a dilutant is a compound, substance, or solution added to the named illegal substance, in this case amphetamine, with the intent to increase the quantity of the final product without affecting its activity.

trolled substance.[5] *Cawthon,* slip op. at 12. According to the Court of Appeals, Prigden's testimony "establishe[d] that the unknown substances were in fact added for the purpose of cutting, i.e., reducing the proportion of amphetamine in the compound,"[6] and therefore, the State did not have to prove that the unidentified substances were added to increase the quantity of the product without affecting its activity. *Id.* As will be seen by our elaboration of the holding in *McGlothlin,* we do not agree with this reasoning.

*McGlothlin,* as discussed above, sets forth the only definition of adulterants and dilutants recognized by this Court. The chemical activity of the amphetamine and the added substance is paramount. If the added substance changes the amphetamine's chemical activity, it is not an adulterant or dilutant, even if it does increase the bulk or quantity of the product.[7] We have further stated:

> [W]here the State attempts to obtain a conviction for an aggravated offense under the theory that the aggregate weight of the controlled substance, including adulterants or dilutants, is over twenty-eight grams, the State first must prove the existence of any adulterants or dilutants, i.e., compounds, substances, or solutions added to the controlled substance to increase the bulk or quantity of the final product [without affecting its activity]. The State must then show that the controlled substance, plus any adulterants or dilutants, if proven to exist, weighs more than twenty-eight grams.

*Reeves v. State,* 806 S.W.2d 540, 542 (Tex. Cr.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991) (cit-

ing *McGlothlin,* 749 S.W.2d at 861; *Engelking v. State,* 750 S.W.2d 213 (Tex.Cr. App.1988); *Sloan v. State,* 750 S.W.2d 788 (Tex.Cr.App.1988)).

In *Reeves,* the State's expert testified that the entire contents of a bag containing amphetamine weighed 29.76 grams. He also stated that he did not determine the percentage of the amphetamine in the bag or the nature of the other substances in the bag. We held that the evidence was insufficient to prove delivery of more than twenty-eight grams of amphetamine. In *Engelking* and *Sloan* a companion case, the evidence revealed that a flask seized contained 3,240 grams of a liquid with some methamphetamine. Another flask contained three hundred grams of liquid and of that liquid .3 of a gram was methamphetamine. The State's expert testified that he did not know the composition of the remainder of the latter flask. He also "indicated that phenyl two proponel (P2P) was present in the second exhibit [the former flask, but] he did not indicate what percentage or weight of the solution was P2P." *Engelking,* 750 S.W.2d at 214. The defense expert testified that he too found the P2P in the former flask, but it was a precursor and not an adulterant or dilutant. We held that the evidence was insufficient to prove possession of more than four hundred grams of methamphetamine, including adulterants and dilutants because there was no evidence that the remainder was added to the methamphetamine with the intent to increase the bulk or quantity of the final product.

Therefore, when adulterants and dilutants constitute a part of the weight utilized to increase punishment, the State

---

5. In reaching this conclusion, the Court of Appeals relied upon TEX.REV.CIV.STAT.ANN. art. 4476–15, § 1.02(15)(F), now TEX. HEALTH & SAFETY CODE ANN. § 481.002(17)(F), which defines drug paraphernalia as including an adulterant or dilutant "used or intended for use in cutting a *controlled substance.*"

6. Pardon the pun, but by using the term "compound" to refer to the white powder, the Court of Appeals *compounds* the issue. A compound is "a substance containing two or more elements chemically combined in fixed proportions: distinguished from MIXTURE in that the constituents of a compound lose their individual charac-

teristics and the compound has new characteristics." Webster's New World Dictionary 291 (2d c. ed. 1986).

7. *McGlothlin* defines adulterants and dilutants as, *inter alia,* substances added to the named illegal substance, in this case amphetamine, "without affecting its activity." *McGlothlin,* 749 S.W.2d at 860. In *McGlothlin,* we were concerned with added substances that result in significant changes to the amphetamine's chemical activity so that ultimately, it can no longer be called amphetamine.

must prove the following beyond a reasonable doubt: (1) the identity of the named illegal substance, (2) that the added remainder (adulterants and/or dilutants) has not affected the chemical activity of the named illegal substance, (3) that the remainder (adulterants and/or dilutants) was added to the named illegal substance with the intent to increase the bulk or quantity of the final product, (4) the weight of the illegal substance, including any adulterants and/or dilutants.

Here, the State's expert testified that the substance contained twenty percent [25.752 grams] amphetamine.[8] The record lacks any testimony regarding the nature of the rest of the substance.[9] Nor did the State prove that the unidentified portion was added to the amphetamine to increase the bulk or quantity of the amphetamine without affecting its chemical activity. *McGlothlin.*

We reverse the judgment of the Court of Appeals and remand this cause to the trial court with instructions to enter a judgment of acquittal.[10]

McCORMICK, P.J., and WHITE, J., dissent.

CLINTON, Judge, concurring with denial of state's motion for rehearing.

Happily this is not a case of "manufacturing" amphetamine such as *McGlothlin v. State*, 749 S.W.2d 856 (Tex.Cr.App.1988), *Dowling v. State*, 1992 WL 278415 (Tex.Cr. App. No. 107–89, delivered this day), and *Thompson v. State*, 1992 WL 278699 (Tex. Cr.App. Nos. 1153–90 & 1154–90, delivered this day), or a case of delivering "wet speed" such as *Reeves v. State*, 806 S.W.2d 540 (Tex.Cr.App.1990). Rather, this is a case of simple possession with intent to deliver a bag of dry white powder containing amphetamine, under the Texas Controlled Substances Act in effect June 18, 1988 (Act).[1]

The sole issue of law in this cause is whether the evidence is sufficient to support a conviction for possession with intent to deliver 28 grams or more but less than 400 grams of amphetamine, in that the proof of aggregate weight of the substance containing amphetamine fails to qualify and quantify any included adulterants and dilutants. See Act, §§ 1.02(4), (15)(F) and (20); 4.02(c)(3); 4.031(a), (c) and (d)(1).[2]

Upon its reading of our prior opinions the court of appeals basically concluded

---

**8.** *See supra* note 3.

**9.** Prigden testified that he noticed the presence of nicotinamide, but he did not specify the percentage of nicotinamide in the substance, nor did he state that it was added to the amphetamine with the intent to increase the bulk or quantity of the final product without affecting its activity.

**10.** We note that when the Court of Appeals decided this case, it did not have the benefit of our decision in *Reeves.*

**1.** In her PDR appellant presents from record facts pertinent to the nature and ingredients of the substance, *viz:*

"The State proved (1) the powder found had a total weight of 128.76 grams, and (2) a 'sample was tested and found to be '20% amphetamine.' [footnote: 'Twenty percent of 128.76 grams is 25.752 grams.'] The State's chemist also testified that the rest was 'adulterants and dilutants,' [record cites omitted throughout] for, as he explained it, 'if its 20 percent amphetamine, *that would have to include adulterants and dilutants* (sic).' However, when specifically asked, he would only say he had not tested and thus could not say what those 'adulterants and dilutants' were."

PDR, at 12. To which by adopting a germane part of its opinion in codefendant's appeal the court of appeals added:

"... but related that he 'did notice what appeared to be the presence of nicotinamide[.]' [footnote:] A compound of the vitamin B complex. [citation omitted].

Nevertheless, [the chemist's] testimony on direct and cross-examination establishes that the substance found in the Cawthon residence and identified before the jury as State Exhibit 9A contained substances which consisted of twenty percent amphetamine blended with unidentified adulterants and dilutants weighing in the aggregate 128.76 grams."

Slip opinion, at 8–9; cf. *Leonard Ray Cawthon v. State*, 795 S.W.2d 818, at 819 (Tex.App.—Tyler 1990), no PDR; see *id.*, n. 1

Emphasis above in original; all other emphasis throughout this opinion is mine unless otherwise indicated.

**2.** From a review of germane cases under the Act, my view is that the bench and bar experience some difficulty in applying material provisions of the statute to the facts of a given case primarily because there is either a dearth of forthright explication of terms relevant to matters in issue or a dispute between "experts"

that language in § 1.02(15)(F), *ante*, "clearly eliminates any requirement that the State must produce expert testimony identifying the *noncontrolled* substances utilized to cut the controlled substances in the prosecution of aggravated drug (sic) possession cases."[3] But by definition "a diluent or adulterant" used in cutting a controlled substance is "drug paraphernalia" under § 1.02(15), and as such is certainly a substance, the "use" of which is "controlled" by being denounced as penal offense under § 4.07. Assuming there may be "uncontrolled substances" used in the manufacturing process to cut some controlled substances, *McGlothlin*, supra, n. 8 and related text, at 860, we are given to understand that the chemical synthesis of precursors "cooked" in water ultimately produces "amphetamine oil" or "amphetamine base" which is then treated with hydrochloric acid to turn "oil" or "base" into "pure amphetamine" in the form of white powder. See *Thompson v. State*, supra, XVIII S.F. 40–41.

Nonetheless some "uncontrolled substances" may or may not survive the "heat," so to speak, or others may appear thereafter. Because for all germane purposes the aggregate weight includes any real "diluent or adulterant, *such as* quinine hydrochloride, mannitol, mannite, dextrose or lactose" used "in cutting a controlled substance" such as amphetamine in white powdery form, it must be identified and quantified to distinguish it from any other included "uncontrolled" matter that is not so used, in order to inform the determination of the jury as factfinder.

With those observations and reserving the question of "affecting chemical activi-

concerning them. See, e.g., *McGlothlin*, supra, at 857 (whether "aqueous layer" is an "adulterant"); *Engleking v. State*, 750 S.W.2d 213, at 214–215 (Tex.Cr.App.1988) (role of P2P and whether adulterant or dilutant necessarily a "cutting agent"); *Farris v. State*, 811 S.W.2d 577, at 580 (Tex.Cr.App.1990) (whether adulterants and dilutant "make any difference" in determining aggregate weight). Sometimes it seems what the factfinder hears is a studied exercise in obfuscation.

**3.** The court characterized the substances in question as "uncontrolled" in light of its percep-

ty," I join the opinion and judgment of the Court.

MILLER, J., joins.

OVERSTREET, Judge, dissenting.

I respectfully dissent because I believe that the majority overly complicates the issue of a substance's weight in light of adulterants and dilutants. We are jurists, not chemists. I believe that a more legalistic approach to determine evidence sufficiency, rather than a chemically analytical approach, is more appropriate. After taking such an approach in the instant cause, I think that there is sufficient evidence of possession of the aggregating weight as alleged. I believe that the majority's hyperscientific methodology, arising from *McGlothlin v. State*, 749 S.W.2d 856 (Tex. Cr.App.1988), needs to be reexamined, particularly with respect to the supposed requirement that an adulterant/dilutant "has not affected the chemical activity" of the named illegal substance.

tion that the "uncontradicted testimony" of the chemist here "establishes that the *unknown* substances were in fact added for the purpose of cutting, i.e., reducing the proportion of the amphetamine in the compound in the bag[.]" slip opinion, at 7–12; see *Leonard Ray Cawthon*, supra, at 819–822. However, the "cutting" substances were "unknown" to him simply because he did not test or conduct an analysis of the substances, and thus could not say what those adulterants and dilutants, if any, were. See majority opinion, at 347–48; II S.F. 211.