**David Harvey GOFORTH, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–93–033–CR.**

Court of Appeals of Texas,
Eastland.

June 16, 1994.

Opinion Overruling Rehearing
Aug. 25, 1994.

---

Jeff Blackburn, Amarillo, for appellant.

John A. Neal, Dist. Atty., Graham, for appellee.

## Opinion

McCLOUD, Chief Justice.

The trial court found appellant guilty of aggravated manufacture of amphetamine and

assessed punishment at confinement for 99 years and a $75,000 fine. See TEX. HEALTH & SAFETY CODE ANN. § 481.-113(c) & (d)(2) (Vernon 1992). We affirm.

In his sole point of error, appellant challenges the sufficiency of the evidence. In reviewing the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the finding of guilt, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991).

On October 4, 1989, law enforcement officers executed a search warrant at a rural residence in Stephens County. Appellant was arrested inside the house. The officers discovered a laboratory in a barn behind the house. The officers found two 22,000 milliliter triple-neck flasks and 11 Mason jars, each containing a brown liquid. Each of the 22,-000 milliliter flasks was set inside a rheostat-controlled heating mantle, and glass condenser tubes attached to water hoses extended vertically from each flask. They also found two boxes containing round-bottom, single-neck flasks (commonly used in converting amphetamine from a liquid to a powder); three cases of Mason jars; four cans labeled "ether" (used to take moisture out of wet amphetamine powder); duct tape; numerous bottles of what appeared to be rubbing alcohol; and two triple-beam scales.

Officer Frank Cleveland, Commander of the West Central Texas Interlocal Crime Task Force, delivered the two flasks and the 11 Mason jars to Eddie Lee Dickie, a chemist for the Texas Department of Public Safety, for analysis of the contents. Dickie testified that the two 22,000 milliliter flasks contained phenylacetone, which is an immediate precursor to amphetamine.[1] As to the 11 Mason jars, Dickie testified that he first determined that each jar contained the same substance. He then combined the contents of all the jars. The combined substance weighed 10

---

1. The first flask contained 11 pounds and 2 ounces of liquid, 28 percent of which was phenylacetone. The remainder of the liquid in the first flask was not analyzed. The liquid in the second

flask weighed 32 pounds and 1.25 ounces. Dickie testified that the second flask contained phenylacetone but that he did not determine the quantity.

pounds and .75 ounces. Dickie testified that the substance contained 34 percent pure amphetamine, which worked out to be "approximately 1550 grams of pure amphetamine."

■ Appellant first contends that, although the substance in the jars contained 34 percent pure amphetamine, the amphetamine present was not the final product ready for distribution as amphetamine, but was instead a liquid containing a mixture of amphetamine and other unanalyzed substances. Therefore, appellant argues that the substance was not "manufactured" amphetamine but, rather, that it was a "compound, mixture, or substance" containing amphetamine, which was not alleged.

As authority for this argument appellant relies on a footnote in Judge Clinton's concurring opinion in *Dowling v. State*, 885 S.W.2d 103, 112–13 n. 7 (Tex.Cr.App.1992) (motion for rehearing granted, case under submission), which states in part:

> [M]any foregoing cases indicate that practitioners are having difficulty analyzing operative facts to determine the appropriate aggravated offense denounced by the Texas Controlled Substances Act. Charging instruments allege criminal conduct pertaining to amphetamine ranging from simple "possession," "possession with intent to manufacture" to actual "manufacture," yet both prosecution and defense overlook that the facts reveal no more than suspects in or around a "lab" engaged in the process of "manufacturing" what is expected will turn out to be, but as the chemist here explained is not, a product "ready for distribution as amphetamine." *In short, there is no "manufactured" amphetamine in the "cooking" flask.* (Emphasis added)

Judge Clinton then suggests that in such cases the proper offense to be charged is a preparatory offense, citing *Baxter v. State*, 718 S.W.2d 28 (Tex.App.—Eastland 1986, pet'n ref'd) (attempted aggravated manufacture of methamphetamine).

We disagree with appellant's argument that the seized substance was not "manufactured" amphetamine and that appellant could only be convicted of a preparatory offense. The Code defines "manufacture" as:

> [T]he production, preparation, propagation, compounding, conversion, or processing of a controlled substance ... directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis.

TEX.HEALTH & SAFETY CODE ANN. § 481.002(25) (Vernon 1992). There is no requirement that, in order to have been "manufactured," the controlled substance must be in the form in which it will be distributed as a final product. The evidence shows that appellant produced, prepared, propagated, compounded, converted, or processed the controlled substance amphetamine by means of chemical synthesis. Therefore, the State proved that appellant "manufactured" amphetamine.

■ Appellant next contends that the State did not meet the requirements of *Cawthon v. State*, 849 S.W.2d 346 (Tex.Cr.App. 1992), because the State failed to produce evidence regarding the identity of the remaining substances in the jars. In *Cawthon*, the appellant was charged with possession with intent to deliver amphetamine having an aggregate weight, including any adulterants and dilutants, of between 28 and 400 grams. The weight of the total substance was 128.76 grams, but the substance contained only 25.-752 grams of amphetamine. The conviction was reversed because the State did not establish that the remainder of the substance was an adulterant or dilutant. The court held:

> [W]hen adulterants and dilutants constitute a part of the weight utilized to increase punishment, the State must prove the following beyond a reasonable doubt: (1) the identity of the named illegal substance, (2) that the added remainder (adulterants and/or dilutants) has not affected the chemical activity of the named illegal substance, (3) that the remainder (adulterants and/or dilutants) was added to the named illegal substance with the intent to increase the bulk or quantity of the final product, (4) the weight of the illegal substance, including any adulterants and/or dilutants.

*Cawthon v. State,* supra at 348–49; see also *Thorpe v. State,* 863 S.W.2d 739 (Tex.Cr.App. 1993); *Reeves v. State,* 806 S.W.2d 540 (Tex. Cr.App.1990), *cert. den'd,* 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991); *Engelking v. State,* 750 S.W.2d 213 (Tex.Cr.App. 1988); *Sloan v. State,* 750 S.W.2d 788 (Tex. Cr.App.1988); *McGlothlin v. State,* 749 S.W.2d 856 (Tex.Cr.App.1988).

Appellant concedes that *Cawthon* is distinguishable because in that case the State relied on the existence of adulterants and/or dilutants to establish the aggregate weight of the controlled substance. Nonetheless, appellant argues that the logic of *Cawthon* extends to this case and, therefore, that the State should have identified the other substances and determined whether those substances affected the chemical activity of the amphetamine. We disagree.

The State is required to prove that the remainder of a substance containing amphetamine does not affect the chemical activity of the amphetamine only when the State seeks to establish that the remainder constitutes an "adulterant" or a "dilutant" as those terms are used in the Code. See *McGlothlin v. State,* supra.[2] Where the State does not rely on the presence of adulterants or dilutants, there is no basis—statutory, logical, or otherwise—for requiring the State to identify the remaining substances and prove that they do not affect the chemical activity of the amphetamine.

Furthermore, in *Thorpe v. State,* supra at 741, after reiterating the requirements of *Cawthon,* the court stated:

In this case, the State charged appellant with possession of more than twenty-eight grams of methamphetamine. The State was required therefore to prove *either* that more than twenty-eight grams of the entire seized substance was methamphetamine *or* that the portion of the seized substance that was methamphetamine weighed less than twenty-eight grams and the remainder was added with the intent to increase the quantity of the final product without affecting the methamphetamine's chemical activity. (Emphasis added)

The State is not required to prove that the remainder was added to increase the quantity of the final product without affecting its chemical activity if the State can prove that the weight of the controlled substance alone is sufficient.

Here, the indictment did not allege the existence of adulterants or dilutants.[3] Furthermore, because the State proved that the pure amphetamine in the substance weighed at least 400 grams, the State did not need to rely on the existence of adulterants or dilutants to establish the weight of the controlled substance. Consequently, the State was not required to prove that the remainder of the substance did not affect the chemical activity of the amphetamine, that the remainder was added to the amphetamine with the intent to increase the bulk or quantity of the final product, or that the amphetamine plus the adulterants and/or dilutants weighed at least 400 grams. The evidence is sufficient to support appellant's conviction. Appellant's point of error is overruled.

The judgment of the trial court is affirmed.

### Opinion on Motion for Rehearing

In his motion for rehearing, appellant again urges the insufficiency of the State's evidence to prove the manufacture of at least 400 grams of amphetamine. Appellant relies on language in *Dowling v. State,* 885 S.W.2d 103 (Tex.Cr.App.1994) (opinion on rehearing on court's motion), which was delivered 13 days after this court handed down its opinion in this case. Specifically, appellant quotes the following language from *Dowling:*

TEX.HEALTH & SAFETY CODE ANN. § 481.002(49) (Vernon Supp.1994) (effective September 1, 1994).

---

**2.** However, the legislature recently added the following definition to the Code:

"Adulterant or dilutant" means any material that increases the bulk or quantity of a controlled substance, *regardless of its effect on the chemical activity of the controlled substance.* (Emphasis added)

**3.** The indictment alleged that appellant "manufacture[d] a controlled substance, namely: amphetamine of at least four hundred grams and more by processing said controlled substance by means of chemical synthesis."

Carefully considered, Texas statutes proscribing "Unlawful Manufacture" of controlled substance contemplate a finished product. The offense is committed when one "manufactur*es*" a controlled substance.... The terms connote a completed product of the manufacturing process. *See Goff v. State,* 777 S.W.2d 418 (Tex. Crim.App.1989).

\* \* \* \* \* \*

[T]he "material, compound, mixture, or preparation" must be in a usable form in order to be a controlled substance in a manufacturing case. If a substance is not usable, it has either not been fully manufactured (in which case, a charge may be made of attempted manufacture) or else it is not a controlled substance (such as in the case of sludge or waste). (Emphasis in original)

We do not believe that the most recent opinion in *Dowling* compels a different result in this case.

■ Although the word "manufacture" contemplates a "completed product of the manufacturing process," *Dowling v. State,* supra, the term does not require that the controlled substance be in the form in which it is to be distributed as a final product or "street ready." However, where the State charges the defendant with manufacture of a "material, compound, mixture, or preparation" containing amphetamine, such "material, compound, mixture, or preparation" must be in a usable form. *Dowling v. State,* supra. But the court's opinion in *Dowling* indicates that the requirement that the substance be in a usable form applies only where the State charges the defendant with manufacture of a "material, compound, mixture, or preparation" containing amphetamine and not where the State charges the defendant with manufacture of a quantity of the "pure" substance. We quote the following examples given by the court in *Dowling v. State,* supra at 126;

For example, if 0.5 grams of amphetamine is found suspended in 200 grams of a liquid made up of ingredients which will make more amphetamine or a usable entity containing amphetamine (but in its pres-

ent state the amphetamine-liquid entity is unusable), that liquid may be counted toward the weight of the entity in an attempted manufacture case and the state may prove that the ingredients would have made "x" grams of amphetamine or of a "material, compound, mixture, or preparation including amphetamine." *Alternatively, the State could charge the defendant with manufacture of the 0.5 grams of amphetamine.*

If, on the other hand, 0.5 grams of amphetamine is found suspended in 200 grams of a liquid which is a waste or by-product of the manufacturing process and incapable of being a usable entity or being made into a usable entity, *then the State could only charge the defendant with manufacture of 0.5 grams of amphetamine.* (Emphasis added)

From the foregoing examples, it is clear that, if 0.5 grams of amphetamine are found suspended in 200 grams of a liquid, the State may charge the defendant with manufacture of 0.5 grams of amphetamine, regardless of the nature of the remaining liquid and regardless of whether it is a usable entity. Such are the facts in this case. Chemist Eddie Lee Dickie testified that he found approximately 1,550 grams of pure amphetamine in a liquid which weighed 10 pounds and .75 ounces in its entirety. Thus, regardless of the nature of the remaining liquid and whether it is a usable entity, the evidence is sufficient to support appellant's conviction for the manufacture of 400 grams or more of amphetamine.

Appellant's motion for rehearing is overruled.