IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0678-04






RONALD CLYDE SEALS, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


COLLIN COUNTY





 Price, J., delivered the opinion of the Court, in which Keller, P.J., Meyers,
Womack, Keasler, and Hervey, JJ., joined. Womack, J., filed a concurring
opinion, in which Keller, P.J., and Meyers, J., joined. Cochran, J., filed a
dissenting opinion, in which Johnson and Holcomb, JJ., joined.


O P I N I O N 




 The appellant was convicted of possession of more than one gram but less than
four grams of methamphetamine. On direct appeal, the appellant complained that blood
found mixed with the methamphetamine was improperly included in the aggregate weight
as an adulterant or dilutant. The court of appeals held that the blood could not be an
adulterant or dilutant. We will reverse because the court of appeals erred by looking
beyond the plain meaning of the legislature's definition of adulterant or dilutant.

I. Facts


 The appellant was indicted for possession of methamphetamine in an amount more
than one gram but less than four grams. During the trial, police officers testified that,
while they were investigating a tip that the appellant was manufacturing
methamphetamine, they discovered a syringe and a vial that were later found to contain
methamphetamine. The State's criminalist testified that the contents of the syringe
weighed 0.05 grams and the contents of a vial weighed 1.50 grams. The criminalist said
that, in addition to methamphetamine, the vial contained nicotinamide (vitamin B3) (1) and
blood. The criminalist did not say how much of the vial's 1.50 grams came from each of
the three substances.

 The appellant admitted possessing less than a gram of methamphetamine. He
testified that the vial contained mostly blood waste. According to the appellant, the vial
was used to squirt blood and trace amounts of methamphetamine when he was unable to
successfully inject the drug into his arm.

 The jury convicted the appellant as charged in the indictment. After finding the
two enhancement paragraphs true, the jury assessed a punishment of 25 years'
imprisonment.

 On direct appeal, the appellant complained that the evidence was legally
insufficient to support the conviction for possession of more than one gram of
methamphetamine. He argued that blood is not an adulterant or dilutant and that the
blood in the vial should not have been included in the aggregate weight of the controlled
substance. Because the State did not show what portion of the vial was blood, he argued,
there was insufficient evidence to show that the weight of the controlled substance, minus
the blood, was greater than one gram. (2) 

 The court of appeals agreed with the appellant's contention that the blood could
not be considered an adulterant or dilutant. The court cited the correct standard for
addressing the legal sufficiency of the evidence. (3) Then it held that, as a matter of logic,
an adulterant or dilutant cannot include every substance that is mixed with a controlled
substance, particularly one introduced after the controlled substance has been used. (4) The
court reversed the conviction, found the appellant guilty of the lesser-included offense of
possession of less than one gram of methamphetamine, and remanded the case for a new
punishment hearing. (5) 

 We granted review to determine whether, in the appellant's circumstances, the
court of appeals correctly held that blood cannot be considered an adulterant or dilutant
for a possession offense under the Texas Controlled Substances Act. We shall reverse. 

II. Law and Analysis


 To convict a defendant for possession of a controlled substance, the State must
show that the defendant knowingly or intentionally possessed a controlled substance. (6) A
controlled substance is defined as "a substance, including a drug, an adulterant, and a
dilutant, listed in Schedule I through V or Penalty Groups 1, 1-A, or 2 through 4." (7) A
controlled substance includes the aggregate weight of any mixture, solution, or other
substance containing a controlled substance. (8) 

 According to the Health and Safety Code, an adulterant or dilutant is defined as
"any material that increases the bulk or quantity of a controlled substance, regardless of
its effect on the chemical activity of the controlled substance." (9) We must determine
whether the blood contained in the appellant's vial was an adulterant or dilutant, the
weight of which could be included with that of the methamphetamine found mixed in the
same vial.

 When we interpret a statute we seek to effectuate the collective intent or purpose
of the legislators who enacted the legislation. (10) Under our decision in Boykin, we must
interpret an unambiguous statute literally, unless doing so would lead to an absurd result
that the legislature could not possibly have intended. (11) If a literal reading of the statute
leads to an absurd result, we resort to extratextual factors to arrive at a sensible
interpretation to effectuate the intent of the legislature. (12) "Where the statue is clear and
unambiguous, the Legislature must be understood to mean what it has expressed, and it is
not for the courts to add or subtract from such a statue." (13)

 We addressed the terms adulterant and dilutant before they were defined by the
legislature. In Cawthon v. State, we held that to include an adulterant or dilutant in the
aggregate weight of a controlled substance, the State must prove four elements: (1) the
identity of the named illegal substance, (2) that the added remainder (adulterants or
dilutants) has not affected the chemical activity of the named illegal substance, (3) that
the remainder (adulterants or dilutants) was added to the named illegal substance with the
intent to increase the bulk or quantity of the final product, and (4) the weight of the illegal
substance, including any adulterants or dilutants. (14) As a consequence of the second and
third elements, the State was required to identify the alleged adulterant or dilutant to show
that it did not affect the chemical activity of the illegal substance and that it was added to
increase the bulk or quantity of the final product.

 Following our decision in Cawthon, the legislature added the definition for
adulterants and dilutants cited above. The literal meaning of the legislature's adulterant
and dilutant definition is that any substance that is added to or mixed with a controlled
substance, regardless of when, how, or why that substance was added, may be added to
the aggregate weight of the controlled substance as an adulterant or dilutant.

 The language of the legislative definition is similar to the language in Cawthon. 
But, in the first clause, the legislature conspicuously left out the requirement that the State
prove intent to increase the bulk or quantity of the controlled substance. The legislature
replaced "[a substance] added with the intent to increase the bulk or quantity of the final
product," (15) with "any material that increases the bulk or quantity of the controlled
substance." (16) Also, the second clause of the legislative definition, "regardless of its effect
on the chemical activity," (17)directly eliminates Cawthon's second element. A plain
reading of the legislature's adulterant or dilutant definition, when compared with
Cawthon's elements, indicates that the legislature intended to abolish Cawthon's limits on
what substances are considered to be adulterants or dilutants. 

 We cannot say that application of the literal meaning of the definition produces
absurd results that the legislature could not have intended. It may lead to instances,
similar to the appellant's, where the weight of a substance that is not intentionally added
to increase the bulk or quantity of a controlled substance is nevertheless used to increase a
defendant's penalty. The enactment of the 1994 amendment, without the requirements in
Cawthon, indicates that the legislature intended this consequence. 

 The court of appeals did not perform the Boykin analysis of the definition. Instead,
it concluded that the legislature could not have meant to include certain substances, such
as the blood in this case, within the definition of adulterant or dilutant. The court of
appeals erred by failing to consider the literal meaning of the legislature's definition.

 In support of the court of appeals's opinion, the appellant alleges that, despite the
plain meaning of the legislature's definition, the legislature could not possibly have meant
to include the blood found mixed with methamphetamine in the vial. The appellant
contends that to read the definition that broadly would be illogical. Such a reading would
allow the State to increase punishments by including the weight of substances, like blood,
that are not used in the manufacturing or transportation process but instead are
unintentionally added following a drug's use. But, as we have said, when the statute is
clear and unambiguous, we must take the legislature at its word. It is not for us to add or
subtract from such a statue. (18)

 One might argue that the legislature meant to include as an adulterant or dilutant
only materials that increase the bulk or quantity of the controlled substance before
distribution, sale, or consumption and that the legislature meant to exclude waste
materials or materials that do not increase the bulk or quantity of salable or usable
weight. But these are not the words that the legislature actually used. The drafters of the
definition could have easily included these terms, but they did not. More to the point, the
drafters could have left the definition that this Court used in McGlothlin v. State (19)and
Cawthon, (20) which would have achieved the same result. What message are we to glean
from the legislature's omission of the phrases "before distribution, sale, or consumption";
"waste products"; and "salable or usable weight"? The only interpretation that is
permitted under the seminal rule of statutory construction: We presume that the
legislature meant what it said.

 An inspection of the legislature's definition of adulterant and dilutant within the
context of the possession of drug paraphernalia (as opposed to the definition in the
context of possession of a controlled substance) is instructive here. An adulterant or
dilutant that is drug paraphernalia only is defined as

 a dilutant or adulterant, such as quinine hydrochloride, mannitol, inositol,
nicotinamide, dextrose, lactose, or absorbent, blotter-type material, that is
used or intended to be used to increase the amount or weight of or to
transfer a controlled substance regardless of whether the dilutant or
adulterant diminishes the efficacy of the controlled substance. (21)

This definition is remarkably similar to the definition of adulterants and dilutants that we
used in McGlothlin and Cawthon, most likely because we used this definition as a guide. 
The legislature explicitly eschewed the use of this definition for adulterants and dilutants
in the context of possession of a controlled substance. (22) 

 The definition of adulterants or dilutants as drug paraphernalia only is distinct
from the definition in the context of possession of a controlled substance, which does not
require any demonstration that the substance was used or intended to be used to increase
the amount of the controlled substance. We might speculate on the reason for the
difference, but we need look no further than another rule of statutory construction: We
endeavor to give effect to the whole statute, which includes each word and phrase, if
possible. (23) If we were to interpret both definitions in the same manner, we would have to
give effect to words that are not present in one definition or we would have to subtract
words that are present in the other. 

 We appreciate the need and the concern for rational public policy. It is not our
place within the judiciary, however, to construe a statute based on our notions of what is
rational or what makes good common sense. It is left to us to effectuate the collective
intent or purpose of the legislators who enacted the legislation, which means that we
interpret an unambiguous statute literally, unless doing so would lead to an absurd result
that the legislature could not possibly have intended. (24) Because the legislature did not
include such phrases as "before distribution, sale, or consumption"; "salable or usable
weight"; or "excluding waste products," we are not at liberty to add them to the
definition.

III. Conclusion


 The court of appeals erred in construing the terms adulterant and dilutant. Because
the blood in this case came within the definition of adulterant or dilutant, the evidence
was legally sufficient to support the jury's verdict. The judgment of the court of appeals
is reversed, and the case is remanded to that court to consider the appellant's remaining
point of error. 

Delivered: November 16, 2005

Publish.
1. Nicotinamide is a substance commonly used as a controlled substance additive.
2. We have held that the State is no longer required to show what amount of a controlled 

substance and what amount of an adulterant or dilutant make up a mixture for purposes of
possession of a controlled substance. Melton v. State, 120 S.W.3d 339, 344 (Tex. Crim. App.
2003).
3. See Jackson v. Virginia, 443 U.S. 307, 319 (1979) (holding that, when conducting a legal
sufficiency review, the reviewing court should view the evidence in the light most favorable to
the verdict to determine whether any rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt).
4. Seals v. State, No. 05-03-01105-CR, slip op. at 4 (Tex. App. -- Dallas, delivered Apr. 1,
2004) (not designated for publication).
5. Id. slip op., at 5.
6. Tex. Health & Safety Code§ 481.116 (1).
7. Tex. Health & Safety Code § 481.002(5).
8. Ibid.
9. Tex. Health & Safety Code § 481.002(49).
10. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).
11. Ibid.
12. Id. at 785-86.
13. Id. at 785.
14. Cawthon v. State, 849 S.W.2d 346, 349 (Tex. Crim. App. 1992).
15. Ibid.
16. Tex. Health & Safety Code § 481.002(49).
17. Ibid. 
18. Boykin, 818 S.W.2d at 785.
19. 749 S.W.2d 856, 860 (Tex. Crim. App. 1988).
20. 849 S.W.2d at 348-49.
21. Tex. Health & Safety Code § 481.002(17)(F).
22. See Tex. Health & Safety Code § 481.002(49) ("'Adulterant or dilutant' means any
material that increases the bulk or quantity of a controlled substance, regardless of its effect on

 the chemical activity of the controlled substance.").
23. Nguyen v. State, 1 S.W.3d 694, 696 (Tex. Crim. App. 1999).
24. Boykin, 818 S.W.2d at 785.