Matthew WARREN, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–96–00092–CR.

Court of Appeals of Texas,
Dallas.

April 27, 1998.

Jeffrey B. Keck, Dallas, for Appellant.

John Rolater, Jr., Assistant District Attorney, Dallas, for State.

Before THOMAS, C.J., and FARRIS[1] and MILLER,[2] JJ.

## OPINION

MILLER, Justice, (Retired).

Appellant Matthew Warren was charged by indictment with the offense of possession of a controlled substance, cocaine, in an amount of one gram or more but less than four grams, enhanced by two prior felony convictions. Warren pleaded not guilty before a jury, but at the conclusion of the guilt stage of the trial, the jury found him guilty as charged in the indictment. Warren had elected for the trial court to set punishment. At the conclusion of the punishment phase, at which Warren pleaded true to the two en-

---

1. The Honorable David F. Farris, Former Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Chuck Miller, Judge, Texas Court of Criminal Appeals, Retired, sitting by assignment.

hancement allegations, the trial court sentenced Warren to thirty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Warren brings four points of error challenging the sufficiency of the evidence and complaining of the trial judge's action in overruling his motion to suppress. We affirm.

Because sufficiency of the evidence is raised, an overview of the evidence adduced at trial is called for. The State first called Dallas Police Officer J.C. Cockrell as a witness. Cockrell testified that, together with his partner, W.W. Smith, he was on routine patrol in southeast Dallas on January 5, 1995. At approximately 5:30 p.m., the officers were driving behind a vehicle that began a series of lane changes without signaling. Cockrell activated the patrol car's top lights and followed the suspect vehicle for two blocks before it pulled over and stopped. Cockrell immediately observed the two occupants of the car doing things with their hands down low and also into the back of the car, actions that aroused Cockrell's and Smith's suspicions. Smith approached the driver and asked him to exit the car, while Cockrell approached the passenger side and asked Warren to exit the car. When Warren got out, Cockrell saw a pill bottle roll down the car seat, from where Warren had just been sitting, to the seam where the back of the front passenger seat meets the seat itself. After both occupants were secured behind the vehicle, Smith retrieved the pill bottle and observed through its brown, translucent side that it contained packaged items inside. Believing the packaging to be consistent with illegal drugs, Smith opened the bottle, and he and Cockrell examined the contents. The packaging inside the bottle appeared to be clear, plastic baggies containing what the officers believed to be cocaine. Cockrell stated that, in his opinion, Warren was in possession of the cocaine. Warren was arrested for possession of a controlled substance. The driver of the vehicle was released after being issued a traffic ticket for failure to maintain a single lane of traffic.

Smith testified next for the State, corroborating virtually the entirety of Cockrell's testimony, including the fact that Smith saw the pill bottle become visible from beneath Warren as Warren got out of the car. Smith added that the pill bottle, which he seized, was a prescription bottle with a name other than Warren's on the prescription label. The packaging which Smith observed through the bottle's side, was, in his experience as a police officer, packaging for crack cocaine. It consisted of small zip-lock clear plastic baggies commonly used as packaging in the sale of crack cocaine.[3]

Dallas Police Officer Stephen Gross testified that he was called in to back up Cockrell and Smith. He arrived after Warren had been arrested. After field testing the substance in the pill bottle, which tested positive for cocaine, Smith transported Warren and the bottle with its contents to the Lew Sterrett jail. At the jail, he turned Warren over to the jailers and placed the bottle and contents in the evidence locker for forwarding to the Southwestern Institute of Forensic Sciences.

John Lomonte, a supervisor in the Drug Analysis Section of the Southwestern Institute of Forensic Sciences, also testified for the State. Lomonte testified that the substance in the ziplock bags taken from the pill bottle was tested by a chemist under his supervision. The testing revealed that the substance was cocaine weighing 1.02 grams, of which .85 grams was pure cocaine.

We now turn to Warren's specific complaints about the legal and factual sufficiency of the evidence. In point one, he urges that the evidence is legally insufficient to prove the weight of the seized substance was more than one gram. In point three, he urges that the evidence is legally insufficient to prove he possessed the cocaine. In point four, he urges that the evidence is factually insufficient to prove that he possessed the cocaine. We will discuss the legal and factual sufficiency questions separately.

---

**3.** Once the baggies themselves were opened, the contents turned out to be cocaine in powder form.

Appellate courts measure legal and factual sufficiency of the evidence against a hypothetically correct charge. *See Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). In a challenge to the *legal* sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *See Emery v. State,* 881 S.W.2d 702, 705 (Tex.Crim. App.1994), *cert. denied,* 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). The reviewing court must determine whether, considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 156–57 (Tex.Crim.App.1991). The standard of review is the same in both direct and circumstantial evidence cases. *See Geesa,* 820 S.W.2d at 158–62.

In a challenge to the *factual* sufficiency of the evidence, we view the evidence without employing the prism of "in the light most favorable to the verdict." *See Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In this type of review, we must consider and weigh all of the evidence in an analysis that amounts to a comparative weight of the evidence review. *See Roper v. State,* 917 S.W.2d 128, 132 (Tex.App.—Fort Worth 1996, pet. ref'd). We therefore consider all of the evidence, comparing evidence that tends to prove the existence of the disputed fact or facts in dispute with evidence that tends to disprove that fact or those facts. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We should set aside the verdict only when the factual finding is against the great weight and preponderance of the evidence so as to be clearly wrong and unjust, manifestly unjust, shocking to the conscience, or clearly demonstrative of bias. *See Clewis,* 922 S.W.2d at 135. In doing so, we must remember that the jury is the sole judge of the weight and credibility of witness testimony. *See Santellan,* 939 S.W.2d at 164. We should be on guard not to substitute our own judgment in these matters for that of the jury. *See id.*

In his first point, Warren contests the legal sufficiency of the evidence to prove that the amount of cocaine was more than one gram. The indictment charged Warren with possessing "a controlled substance, to wit: COCAINE, in an amount by aggregate weight, including adulterants or dilutants, of 1 gram or more but less that 4 grams." This point, dealing with the weight of the cocaine, concerns mainly the testimony of Lomonte. He testified that the tested substance consisted of .85 grams of pure cocaine and adulterants and dilutants that increased the total weight of the mixture to 1.02 grams. Lomonte said that adulterants and dilutants are materials that are added to a controlled substance, as in this case, to increase the bulk of the substance. Lomonte did not testify about any potential effect the adulterants and dilutants might have had on the chemical activity of the .85 grams of cocaine.

Initially, Warren cites us to *Cawthon v. State,* 849 S.W.2d 346 (Tex.Crim.App.1992), a court of criminal appeals opinion holding that if the State alleges in the indictment that adulterants or dilutants constitute a part of the weight utilized to reach a total weight of the substance seized, thereby increasing the punishment range because of the additional weight of the adulterants or dilutants, then the State must prove the following beyond a reasonable doubt: (1) the identity of the named illegal substance, (2) that the added remainder (adulterants and/or dilutants) has not affected the chemical activity of the named illegal substance, (3) that the remainder (adulterants and/or dilutants) was added to the named illegal substance with the intent to increase the bulk or quantity of the final product, and (4) the weight of the illegal substance, including any adulterants and/or dilutants. *Cawthon,* 849 S.W.2d at 348–49. Warren maintains, and the State does not dispute, that Lomonte's testimony does not establish that the adulterants and/or dilutants did not affect the chemical activity of the cocaine or that the adulterants and/or dilutants were added to the cocaine with the intent to increase the bulk or quantity of the final product. Because all of the four prerequisites mandated by *Cawthon* were not met, Warren urges that the State has failed to prove, beyond a reasonable doubt, that the

total weight of the seized substance, including adulterants or dilutants, was more than .85 grams.

For its part, the State points out that after the *Cawthon* decision was handed down, the legislature promulgated a definition of adulterant or dilutant in the health and safety code which vitiated the holding in *Cawthon*. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (Vernon Supp.1998). That definition states: "'Adulterant or dilutant' means any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." *Id.* This definition of adulterant or dilutant was in effect at the time of the commission of the offense for which Warren was indicted. *See id.* The definition of adulterant or dilutant in effect at the time *Cawthon* was decided was a court-created definition from *McGlothlin v. State*, 749 S.W.2d 856, 860 (Tex.Crim.App.1988). *See Cawthon*, 849 S.W.2d at 348. The *McGlothlin* definition required that when the State alleges in the indictment that adulterants or dilutants constitute a part of the weight utilized to reach a total weight of the controlled substance, it must prove the adulterants and dilutants were compounds, substances, or solutions added to the controlled substance either (1) with the intent to increase the bulk of the product, or (2) to increase the quantity of the final product without affecting its activity. *See Cawthon*, 849 S.W.2d at 348; *McGlothlin*, 749 S.W.2d at 860.

◼ The State urges us to interpret the newer legislative definition in such a way as to undermine the holding in *Cawthon*. When we are called on to interpret the legislative intent of a statute or code provision, we are guided primarily by two principles. First, we are to focus on the literal text of the statute or provision and discern the fair, objective meaning of that text at the time of its enactment. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). We give effect to the plain meaning of the statute or provision unless doing so would lead to absurd consequences that were not possibly intended by the legislature. *See id.* Second, we presume that when the legislature

changes a law, it means to change the law. *See Ex parte Trahan*, 591 S.W.2d 837, 842 (Tex.Crim.App.1979). This means that the legislature is presumed to change the law when it amends a statute, and an interpretation should be adopted that gives effect to the intended change rather than one which renders the amendment useless. *See id.*

Applying these principles to the legislatively mandated definition of adulterant or dilutant, and contrasting it to the court-created definition from *McGlothlin* and *Cawthon*, it is apparent that the legislature made some changes. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (Vernon Supp.1998); *Cawthon*, 849 S.W.2d at 348; *McGlothlin*, 749 S.W.2d at 860. In legislatively defining adulterant or dilutant as any material that increases the bulk or quantity of a controlled substance, the legislature glaringly omitted any requirement of *intent* to increase the bulk or quantity of the final product. Moreover, in adding the caveat "regardless of its effect on the chemical activity of the controlled substance," the legislature squarely negated the requirement "that the added remainder (adulterants and/or dilutants) has not affected the chemical activity of the named illegal substance."

◼ We, therefore, agree with the State that a common sense reading of the legislative definition of adulterant and dilutant eliminates the requirements that the State prove (1) *intent* to increase the bulk or quantity, and (2) the adulterants or dilutants have not affected the chemical activity of the named substance. *Accord Williams v. State*, 936 S.W.2d 399, 405 (Tex.App.—Fort Worth 1996, pet. ref'd) (legislative definition eliminates *Cawthon* requirement of proving the added adulterants or dilutants had not affected the chemical activity of the controlled substance).

◼ With this preliminary holding in mind, and viewing the evidence in the light most favorable to the verdict, we conclude that Lomonte's testimony was sufficient to prove that the weight of the cocaine, including adulterants or dilutants, was more than one gram. Lomonte was unequivocal in saying that the substance in the ziplock bags

taken from the pill bottle was .85 grams of pure cocaine, combined with adulterants and dilutants that increased the total weight of the mixture to 1.02 grams. Lomonte said the adulterants and dilutants were materials that were added to the cocaine to increase the bulk of the substance. Under section 481.002(49) of the health and safety code, all the State had to prove under the challenge brought forth in this appellate point was that the .17 grams (1.02 grams total weight minus .85 grams pure cocaine) was material that increased the bulk or quantity of the cocaine, regardless of its effect on the chemical activity of the cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (Vernon Supp.1998); *Williams*, 936 S.W.2d at 405. Lomonte's testimony, when viewed in the light most favorable to the verdict, is sufficient for us to conclude that a rational trier of fact could have found this element of the crime of possession of a controlled substance, cocaine, in an amount of one gram or more but less than four grams, beyond a reasonable doubt. *See Geesa*, 820 S.W.2d at 156–57. Point one is overruled.

■ In point three, Warren contests the legal sufficiency of the evidence to prove he possessed the cocaine found in the pill bottle he had, by all appearances, been sitting on. Warren cites *Humason v. State*, 728 S.W.2d 363, 365–67 (Tex.Crim.App.1987),[4] for the proposition that in a possession case, the State must prove that the accused both knew he was possessing contraband and knew what the contraband specifically was. The State agrees that it must prove care, custody, and control over the seized item and also that the accused knew that the item was contraband. *See Guiton v. State*, 742 S.W.2d 5, 8 (Tex.Crim.App.1987); *Earvin v. State*, 632 S.W.2d 920, 923 (Tex.App.—Dallas 1982, pet. ref'd).

The evidence in this case showed that Warren was a passenger in a car driven by a person whom the police did not arrest for possession of the cocaine. Both the driver and Warren made suspicious movements during the pursuit and as the officers approached after the cars stopped. The translucent bottle was directly under Warren. The label on the bottle contained the name of the person for whom the original pills were prescribed, and that name was neither the driver's nor Warren's. The bottle's contents were easily observable through the bottle's walls. The contents were clear plastic ziplock baggies containing cocaine in powder form. As soon as Warren got out of the seat, the bottle, in plain view, rolled down the seat toward where the seat back meets the seat bottom. We know from this fact that the bottle was not positioned so as to be at rest when Warren was not occupying the seat. This supports the State's theory that Warren stuck the bottle beneath himself after the presence of the police was detected. It certainly is not consistent, in the ordinary experience of life, with the bottle being already on the seat when Warren got in the car and sat down. Cockrell testified that in his opinion, based on the particular facts of the furtive movements of Warren and the driver and the unique positioning and character of the bottle underneath Warren, Warren had care custody, control, and possession of the cocaine. We agree.

The facts in this case show much more than mere proximity to the contraband. *Cf. Humason*, 728 S.W.2d at 367 (cocaine found in open gym bag on seat of truck defendant was driving insufficient to sustain conviction for possession where there were no other affirmative links); *Randle v. State*, 828 S.W.2d 315, 317 (Tex.App.—Austin, 1992, no pet.) (cocaine found in compartment in driver's door of car defendant was driving insufficient to sustain conviction for possession where there were no other affirmative links); *Baltazar v. State*, 638 S.W.2d 130, 131 (Tex. App.—Corpus Christi 1982, no pet.) (cocaine found on dashboard of car driven by defendant insufficient to sustain conviction for possession where only evidence as to custody and control of vehicle related to the several blocks that he drove and there were no other

**4.** We note that the court in *Humason*, a pre-*Geesa* case, relied on the "reasonable hypothesis" standard of review in its analysis of the sufficiency of the evidence abrogated by *Geesa*. *See Geesa*, 820 S.W.2d at 160–61.

affirmative links).[5] Considering the evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found beyond a reasonable doubt that Warren possessed the pill bottle containing cocaine and that he knew the bottle's contents were cocaine. *See Jackson*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89; *Geesa*, 820 S.W.2d at 156–57. Point three is overruled.

In point four, Warren contests the factual sufficiency of the same evidence contested in point three. We, therefore, will conduct a comparative weight of the evidence review, considering all of the evidence, and search for evidence which tends to prove Warren knowingly and intentionally possessed the contraband and compare it to evidence which tends to disprove that Warren knowingly and intentionally possessed the contraband. *See Santellan*, 939 S.W.2d at 164; *Roper*, 917 S.W.2d at 132.

Warren did not produce any evidence controverting the State's case. Though he presumably knew the driver of the car in which he was a passenger, he called no witnesses and offered no reason for the unavailability of any witnesses. Additionally, Warren himself did not testify. Therefore, the verdict of the jury, as concerns point four, rested solely on the weight and credibility of officers Cockrell, Smith, and Gross. Their testimony was clear and straightforward in the face of cross-examination. Warren's theory of the case, that he did not know the pill bottle was underneath him, was rejected by the jury based on these three witnesses' testimony. That testimony cumulatively showed that Warren furtively moved about his area in the car once the police had made their presence known. It showed Warren was sitting directly on a pill bottle which, in normal life experience, he would have removed from beneath him had it been sitting in the seat when he sat down. It showed the pill bottle was wedged under Warren in a manner consistent only with having been put there after Warren was already seated, not where gravity led the bottle, once Warren got up. It showed the bottle contained easily visible,

from the outside, packaging in the form of clear ziplock baggies, as opposed to the normal contents of pills one would expect to find. It showed this was a common form of packaging crack cocaine for sale.

Remembering that the jury is the sole judge of the weight and credibility of the three witnesses' testimony, we conclude the jury's verdict that Warren knowingly and intentionally possessed the cocaine is not against the great weight and preponderance of the evidence so as to be either clearly wrong and unjust, manifestly unjust, shocking to the conscience, or clearly demonstrative of bias. *See Santellan*, 939 S.W.2d at 164; *Clewis*, 922 S.W.2d at 135. Point four is overruled.

In point two, Warren contests the legality of the search of the automobile and seizure of the pill bottle, done by the combined efforts of Cockrell and Smith. The trial court conducted a hearing on Warren's motion to suppress. The State called only Cockrell to the stand. He testified to the same facts narrated above in the discussion under points one, three, and four. Germane to the issue at hand, Cockrell said that Warren did not claim any possessory interest in the automobile or any of the contents therein. The automobile was not registered to Warren, and the pill bottle did not bear Warren's name on the label.

Based on Cockrell's testimony, Warren urges that the automobile exception to the warrant requirement did not apply in this case. *See South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976); *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). Warren further argues that the plain view doctrine did not apply because the nature of the contents of the pill bottle was not readily apparent before its seizure. *See Arizona v. Hicks*, 480 U.S. 321, 323–24, 107 S.Ct. 1149, 1151–52, 94 L.Ed.2d 347 (1987). Thus, concludes Warren, this warrantless search and seizure was unconstitutional. *See*

---

5. Note, the cases cited here relied on the "reasonable hypothesis" standard of review for sufficiency of the evidence challenges in circumstan-

tial evidence cases overruled by *Geesa*, 820 S.W.2d at 160–61.

*Katz v. United States,* 389 U.S. 347, 359, 88 S.Ct. 507, 515–16, 19 L.Ed.2d 576 (1967).

■■■■ The State counters that Warren had no reasonable expectation of privacy in the automobile and thus has no standing to contest the search. *See United States v. Salvucci,* 448 U.S. 83, 95, 100 S.Ct. 2547, 2554–55, 65 L.Ed.2d 619 (1980); *Rawlings v. Kentucky,* 448 U.S. 98, 105–06, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 148–49, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978). Case law from these Supreme Court cases makes it clear that a mere passenger in an automobile does not have a legitimate expectation of privacy in the interior of the automobile and thus does not have standing to contest any search of that automobile. *See Meeks v. State,* 692 S.W.2d 504, 510 (Tex.Crim.App.1985). Even permission from the driver to ride in the vehicle does not confer standing on the passenger. *See Lewis v. State,* 664 S.W.2d 345, 347 (Tex.Crim.App.1984). Only when a passenger asserts an ownership interest in the automobile or property seized does he have a legitimate expectation of privacy in the interior of the automobile or the contents of the property. *See Meeks,* 692 S.W.2d at 510; *Kelley v. State,* 807 S.W.2d 810, 815 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd).

Almost in passing in his brief, Warren maintains that a governmental interference in a person's possessory interest in property is a seizure, regardless of whether it occurs in a place where the owner of the property has a reasonable expectation of privacy or not. *See Soldal v. Cook County, Ill.,* 506 U.S. 56, 61, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992). In *Soldal,* Cook County Sheriff's Department deputies aided, by their mere presence, a landlord in his forcible seizure and removal, by tow truck, of a tenant's mobile home. *See id.* at 58–59, 113 S.Ct. at 541–42. The Seventh Circuit held against the tenant, saying that absent interference with privacy or liberty, pure deprivation of property is not cognizable under the Fourth Amendment. *See id.* at 60, 113 S.Ct. at 542–43. The Supreme Court reversed, holding contrary to the conclusion of the Seventh Circuit. *See id.* at 72, 113 S.Ct. at 549. In doing so, however, the Supreme Court was careful to point out that a seizure only occurs when a person's *possessory* interests in property are interfered with. *See id.* at 61, 113 S.Ct. at 543. The Soldals had asserted a possessory interest in their mobile home at the trial level and thus the forcible seizure and removal of the home, by tow truck, under color of state law, was a seizure under the Fourth Amendment. *See id.* at 72, 113 S.Ct. at 549.

■■■■ Conversely, in this case, Warren does not assert a possessory interest in the automobile searched or the pill bottle seized and searched. In fact, his defense was based on the theory that he had no knowledge of the existence of the pill bottle before the police saw and seized it. As such, the holding in *Soldal* does not apply in this case. Because Warren was a mere passenger, without asserted possessory interest in the places searched or items seized, we conclude he lacked standing to contest the search and seizure done by Cockrell and Smith. *See Meeks,* 692 S.W.2d at 510; *Lewis,* 664 S.W.2d at 347. Point two is overruled.

We affirm the judgment of the trial court.