11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Cornelio
Frias Parra

Appellant

Vs.                   No.
11-01-00117-CR B Appeal from Dallas County

State of Texas

Appellee

 

The jury
convicted Cornelio Frias Parra of the offense of possession with the intent to
deliver methamphetamine in an amount by aggregate weight, including any
adulterants or dilutants, of 400 grams or more.  The trial court assessed appellant=s punishment for 25 years and a $1,500 fine.  We affirm.

Appellant
raises three issues on appeal.  First,
he claims that the trial court denied him the right to effective assistance of
counsel.  Second, he claims that the
trial court denied him the constitutional 
right to counsel of his choice. 
Third, he asserts that the evidence is legally insufficient to support
his conviction because there is no evidence that he possessed 400 grams or more
of methamphetamine, including adulterants or dilutants.

We address
appellant=s first and second issues together because
appellant, in support of the issues, raises the same complaints about the trial
court.  In support of his claim that the trial court
denied him effective assistance of counsel, appellant contends that (1) the trial court abused its discretion in
permitting his retained counsel to withdraw, (2) the trial court denied him the
reasonable opportunity to hire new counsel of his choice, and (3) the trial
court forced him to accept appointed counsel who was not prepared for
trial.  In support of his claim that the
trial court denied him the constitutional right to counsel of his choice,
appellant contends that (1) the trial court improperly permitted his retained
counsel to withdraw and (2) the trial court failed to provide him with a
reasonable opportunity to retain new counsel. 









A criminal
defendant is entitled to counsel of his choice if he is able to pay for the
counsel.  Powell v. Alabama, 287 U.S.
45, 53 (1932).  However, an indigent
defendant does not have the right to the appointment of counsel of choice.  Stearnes v. Clinton, 780 S.W.2d 216, 221
(Tex.Cr.App.1989).  The trial court, at
the pre-indictment stage, determined that appellant was indigent and appointed
Sharion Fisher to represent appellant. 
Appellant later retained  Juan
Carlos Sanchez to represent him.  During
the next four months, the case was reset numerous times; and then, appellant=s retained counsel filed a motion to
withdraw.  Appellant=s counsel based the request to withdraw on
appellant=s failure Ato meet contractual obligations@ and on not being able to Apay for a jury trial as agreed upon.@  The trial court permitted
appellant=s retained counsel to withdraw and
reappointed Sharion Fisher as appellant=s counsel. 

We review
the trial court=s decision to allow appellant=s retained counsel to withdraw under an abuse
of discretion standard.  Green v. State,
840 S.W.2d 394, 408 (Tex.Cr.App.1992), cert. den=d, 507 U.S. 1020 (1993).  The
trial court permitted Sanchez to withdraw on February 9, 2001. Appellant claims
that he did not have notice of the motion to withdraw before the trial court
granted it.  Appellant wrote a letter to
the trial court (the letter is stamped as filed by the district clerk=s office on February 26, 2001).  In the letter, appellant indicated that it
had come to his attention that Sanchez had petitioned the court to
withdraw.  In response to Sanchez=s claim that appellant had failed to meet his
contractual obligations, appellant indicated that Sanchez had failed Ato uphold his obligations for the first part
of his retainer which he has been paid in full for.@ 
Appellant did not express an ability to pay his counsel for any more
work, such as the jury trial.  Appellant
requested Afurther audience with the court to express my
side to this situation.@  

The record
does not show that appellant made any more attempts (orally or in writing) to
communicate with the trial court about the withdrawal of his retained
attorney.  On February 28, 2001, the
case went to trial.  Appellant=s appointed counsel, on appellant=s behalf, presented appellant=s handwritten motion for continuance.  In the motion, appellant did not state
anything or complain about the withdrawal of his retained attorney.  He neither objected to his court-appointed
attorney nor requested time to hire new counsel.  Instead, he asked for more time to prepare.  He believed that his attorney did not have
enough time to prepare.   He never
indicated that he wanted  Sanchez to
continue to represent him.  The record
does not demonstrate that the trial court abused its discretion when it
permitted Sanchez to withdraw.








Appellant argues that the trial court was required to make
another determination of indigency before reappointing Fisher.  Sanchez withdrew on February 9, and the
trial court apparently appointed Fisher on the same day.  The record establishes that it was proper
for the trial court to reappoint counsel, whether or not the trial court
actually made another determination of appellant=s indigency status.  The record does not reflect that appellant=s financial
ability  had changed since the trial
court=s earlier
determination that appellant was indigent. 
Apparently, appellant or someone on his behalf had paid a retainer to
Sanchez, but the record does not show the amount of the retainer or who paid
it.  Appellant never stated that he had
the ability to pay counsel of his choice. 
Additionally, only a month later, on March 7, 2001, appellant, again
claiming to be indigent, requested that the trial court appoint counsel in
connection with his appeal; and the trial court appointed appellant=s current
counsel.  The trial court did not err
when it reappointed Fisher to represent appellant.

Appellant claims that the trial court erred by failing to
allow appellant a reasonable time to employ new counsel after permitting
Sanchez to withdraw.  Appellant did not
request time to hire new counsel or indicate that he wanted to hire new
counsel.  He failed to present any
request for time to employ new counsel to the trial court.  The trial court did not err.

Appellant complains that the trial court prejudiced him by
making Fisher go to trial only 19 days after she was appointed.  We disagree.  This amount of time exceeds the statutory requirement that
court-appointed counsel have a minimum of 10 days to prepare for trial after
appointment.  See TEX. CODE CRIM. PRO.
ANN. art. 1.051 (Vernon Supp. 2002); Marin v. State, 891 S.W.2d 267
(Tex.Cr.App.1994).               

In reviewing a claim of ineffective assistance of counsel, we
must apply an objective standard of reasonableness.   A defendant making a claim of ineffective assistance of counsel
must show that (1) counsel was deficient and (2) there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different. 
Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v. State, 988
S.W.2d 770 (Tex.Cr.App.1999); Hernandez v. State, 726 S.W.2d 53
(Tex.Cr.App.1986).   We analyze
appellant=s state and
federal claims together because the Texas constitutional and statutory
provisions do not provide any greater protection than the federal
provisions.  See Butler v. State, 872
S.W.2d 227 (Tex.Cr.App.1994), cert. den'd, 513 U.S. 1157 (1995).








A claim of ineffective assistance of counsel must be
determined on the particular facts and circumstances of each individual
case.  See Jimenez v. State, 804 S.W.2d
334, 338 (Tex.App. - San Antonio 1991, pet=n ref'd). 
Isolated instances in the record reflecting errors of omission or
commission do not render counsel's performance deficient.  McFarland v. State, 845 S.W.2d 824, 843
(Tex.Cr.App.1992), cert. den'd, 508 U.S. 963 (1993).  Whether the Strickland test has been
met is to be judged by the totality of the representation.  McFarland v. State, supra.   There is a strong presumption that counsel
rendered adequate assistance and made all significant decisions in the exercise
of reasonable professional judgment. 
See Strickland v. Washington, supra at 689; Stafford v. State, 813 S.W
.2d 503, 506 (Tex.Cr.App.1991). Stated another way, "competence is
presumed and appellant must rebut this presumption by proving that his
attorney's representation was unreasonable under prevailing professional norms
and that the challenged action was not sound trial strategy." Stafford v.
State, supra at 506.

Appellant has the burden of proving ineffective assistance of
counsel by a preponderance of the evidence. See Moore v. State, 694 S.W.2d 528,
531 (Tex.Cr.App.1985).  Allegations of
ineffective assistance of counsel will be sustained only if they are firmly
founded.  See Jimenez v. State, supra at
338.  However, while a defendant must
overcome the presumption that the complained of errors are supported by sound
trial strategy, counsel's conduct will not be supported by the presumption of
competence where counsel's actions cannot be attributed to any reasonable trial
strategy.  See Jackson v. State, 877
S.W.2d 768, 771 (Tex.Cr.App.1994).           

Appellant=s only complaints about Fisher are that
she failed to meet with appellant until five days before trial and that she
failed to secure appellant=s character witnesses for trial.  Appellant does not attack any of  Fisher=s decisions or actions  at trial. 
The witnesses that appellant wanted to testify at trial were his uncle,
his wife, and his boss in California. 








Appellant has not satisfied either of the Strickland
elements.  First, appellant has not
shown that his counsel was ineffective. 
The record does not establish that appellant=s appointed
counsel was ineffective.  Furthermore,
the record establishes that his appointed counsel, as pointed out by the State,
filed and argued numerous pretrial motions and actively participated throughout
the entire trial.  The record does not
establish a lack of trial strategy on the part of appellant=s counsel.  Second, the record does not show that there
is a reasonable probability that the outcome of the proceedings would have been
different but for his appointed counsel=s alleged deficiency.  Appellant contends that it is reasonable to
believe that a different result at trial would have occurred if his Acorroborating@ witnesses had
been able to testify.  We disagree.  Appellant=s character or Acorroborating@ witnesses have
no personal knowledge about the incident in question.  We overrule appellant=s first and second issues.

In his third issue, appellant asserts that the evidence is
legally insufficient to support the conviction, claiming that there is no
evidence that the amount of methamphetamine that appellant possessed was over
400 grams.  In reviewing the legal
sufficiency of the evidence, we review the evidence in the light most favorable
to the prosecution.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Turner v. State, 805 S.W.2d 423, 427
(Tex.Cr.App.1991).  The inquiry is
whether any rational trier of fact could have found the elements of the offense
beyond a reasonable doubt.  Turner v.
State, supra at 427.  The jury, as the
fact finder, was the sole judge of the credibility of the witnesses and the
weight to be given their testimony and could choose to believe or disbelieve
all or any part of any witness's testimony. 
TEX. CODE CRIM. PRO. ANN. arts. 36.13 & 38.04 (Vernon 1979 &
1981); Adelman v. State, 828 S.W.2d 418, 421 (Tex.Cr.App.1992).  








The State
had the burden to prove beyond a reasonable doubt that appellant possessed,
with the intent to deliver, methamphetamine in an amount by aggregate weight,
including any adulterants or dilutants, of 400 grams or more.  Appellant concedes that there was specific
evidence that he possessed 231 grams of methamphetamine, but argues that there
was no evidence that 169 additional grams of the substance is an Aadulterant@ or Adilutant@ as these terms have been defined by the Texas courts.  An Aadulterant or dilutant@ is Aany material that increases the bulk or
quantity of a controlled substance, regardless of its effect on the chemical
activity of the controlled substance.@  TEX. HEALTH & SAFETY CODE
ANN. ' 481.002(49) (Vernon Pamph. Supp. 2002).  Under this definition, the State is required
to prove that material other than the controlled substance increased the bulk
or quantity of the controlled substance. 
See Warren v. State, 971 S.W.2d 656, 661 (Tex.App. - Dallas 1998, no pet=n). 
In order to establish that the substance in question weighed at least as
much as the minimum weight charged in the indictment, the State must only prove
(1) that part of the substance is a controlled substance and (2) that the
aggregate weight of the substance (controlled substance plus other material)
equals or exceeds the minimum weight alleged in the indictment.  See Williams v. State, 936 S.W.2d 399, 405
(Tex.App. - Fort Worth 1996, pet=n ref=d). 
Thus, it is not necessary for the State to establish a specific weight
of the controlled substance or a specific weight of the other material (weight
of the adulterants and dilutants).  See
Williams v. State, supra at 405.      

Matthew
Fihlman, a special agent with the Drug Enforcement Administration (DEA),
testified that he searched the vehicle at the scene of appellant=s arrest. 
He found ten packages of a substance in the trunk.  He took photographs of the packages.  The photographs were introduced at trial as
State=s Exhibits Nos. 5 thru 9.

Cheryl
White, a forensic chemist with the DEA, testified that she tested the
substance.  She prepared a report
concerning her findings.  The report was
introduced at trial as State=s Exhibit No. 13.  The report
indicated that the substance was in ten packages.  White stated that there were ten bundles of the substance.  She did a preliminary test on each
bundle.  All ten of the bundles tested
positive for methamphetamine.  She also
referred to the bundles of the substance as bricks.  She then took a portion from each of the bundles to compile a composite.  She grounded up the composite and did her
final analysis.  

White testified
concerning her findings.  The gross
weight of the substance was 4,800 grams. 
The gross weight included the methamphetamine, adulterants, and
packaging.  The total or net weight of
the substance (without packaging) was 4,390 grams.  The substance contained 5.3 percent methamphetamine (231
grams).  White testified that the
remainder (roughly 95 percent) of the sample was made up of adulterants,
dilutants, and moisture.  She testified
that adulterants and dilutants accounted for this other (roughly 95 percent)
part of the substance.   White=s report indicated that the sample contained Ad-Methamphetamine@ and ADimethyl Sulfone.@

White=s testimony is legally sufficient to support
the conviction.  She testified that part
of the seized substance was methamphetamine (231 grams) and that the total
weight of the seized substance was 4,390 grams.  This evidence alone is legally sufficient to support a finding
that appellant possessed methamphetamine of an aggregate weight, including
adulterants and dilutants, of 400 grams or more.  See Warren v. State, supra at 661; Williams v. State, supra at
405.








Appellant
relies upon the Court of Criminal Appeals= decisions in McGlothlin v. State, 749 S.W.2d 856 (Tex.Cr.App.1988),
and Cawthon v. State, 849 S.W.2d 346 (Tex.Cr.App.1992).   The court decided these cases before the
legislature defined Aadulterants@ and Adilutants@  in the relevant section of the Texas
Controlled Substances Act.  See Warren
v. State, supra at 660.      

In Cawthon,
the court interpreted the McGlothlin case and determined that
adulterants and dilutants are Acompounds, substances, or solutions added to the named illegal
substance...with the intent to increase the quantity of the final product
without affecting its activity.@  Cawthon v. State,  supra at 347 n.4.  Using this definition, the Court of Criminal Appeals held that,
in order to include adulterants or dilutants as part of the weight utilized to
increase punishment, the State is required (1) to prove the identity of the
illegal substance, (2) to prove that the added remainder (adulterants and/or
dilutants) has not affected the chemical activity of the named illegal
substance, (3) to prove that the remainder (adulterants and/or dilutants) was
added to the named illegal substance with the intent to increase the bulk or
quantity of the final product, and (4) to prove the weight of the illegal
substance, including any adulterants and/or dilutants.  Cawthon v. State, supra at 348-49.  The legislature=s definition of Aadulterants@ and Adilutants@ as  Aany material that increases the bulk or
quantity of a controlled substance, regardless of its effect on the chemical
activity of the controlled substance@ Aeliminates the requirements that the State
prove (1) intent to increase the bulk or quantity, and (2) the adulterants or
dilutants have not affected the chemical activity of the named substance.@ 
Warren v. State, supra at 660.  

Since the
courts in McGlothlin and Cawthon considered a different
definition of Aadulterants and dilutants@ and, therefore, applied a different
standard, much of the analysis and reasoning in those cases do not apply to
this case.  However, we find that the
evidence would be legally sufficient to support appellant=s conviction even under a  McGlothlin and Cawthon analysis.  








In McGlothlin,
the police seized an amphetamine solution. 
The solution was in a three-layer flask.  The gross weight of the seized material was 3,118 grams; the net
weight of the solution in the flask was 2,845 grams.  The jury convicted the defendant of the offense of possession of
amphetamine of an aggregate weight, including any adulterants or dilutants, of
400 grams or more.  Both parties
presented expert testimony concerning the weight and content of the
amphetamine.  The experts agreed that
the solution in the flask was split into two different layers.  There was a larger Aaqueous layer@ on the bottom and a smaller Aorganic layer@
floating on top of the aqueous layer. 
The State=s expert testified that the two layers were Asignificantly different@ and that the layers did not mix.  He admitted that most of the Aaqueous layer@ was water.  The court held that
there was no evidence that the water was an adulterant or dilutant:

It is
clear from the record that without the addition of the water, the appellant was
in possession of less than 400 grams. 
The record is devoid of any evidence pertaining to the reason or purpose
for the presence of the water in the solution. 
Absent any such evidence it cannot be said that the water was an
adulterant or dilutant.  That is, the
record contains no evidence that the water was intended to increase the bulk or
quantity of the final product.

 

McGlothlin v. State,
supra at 861.

In Cawthon,
the State=s expert testified that the substance in
question contained 20 percent amphetamine. 
The expert testified that he noticed the presence of nicotinamide, but
the State did not offer any evidence as to the nature or purpose of the nicotinamide
or as to whether it was added with the intent to increase the bulk of the
substance without affecting its chemical activity.   Cawthon v. State, supra at 349 n.9.  The court explained that the State failed to prove Athat the unidentified portion was added to
the amphetamine to increase the bulk or quantity of the amphetamine without
affecting its chemical activity.@  Cawthon v. State, supra at
349.   

McGlothlin involved an aqueous layer (water).  Cawthon involved a lack of testimony
concerning an unidentified portion of the substance.  In the present case, the State presented evidence concerning the
methamphetamine and the other material in the substance.  The substance was in ten packages. The
substance was not a solution.  It did
not have more than one layer.  It was
mixed together.  There was no water
present.  There was only moisture.  The substance in each of the ten packages
tested positive for methamphetamine.  It
was obvious that something was added to the methamphetamine to substantially
increase its bulk.  White referred to
the substance as being in ten bricks. 
The photographs showed the nature of the substance.  The testing established that methamphetamine
made up 5.3 percent of the substance.  








White
testified that adulterants and dilutants roughly made up the other 95 percent
of the tested substance.  White=s report showed the presence of dimethyl
sulfone.  Kim Sanders, a narcotics
officer with the Dallas Police Department, testified at trial.  Based upon his 18 years experience, Officer
Sanders has substantial knowledge about methamphetamine and other controlled
substances.  He testified that dimethyl
sulfate is used to increase the bulk of 
methamphetamine.  Based upon the
evidence, it is reasonable to conclude that the dimethyl sulfone referred to in
White=s report was used to increase the bulk of the
substance.

In Short
v. State, 874 S.W.2d 666, 668 (Tex Cr.App.1994), another case that was decided
before the legislature enacted its definition of Aadulterant or dilutant,@ the defendant was convicted of manufacturing methamphetamine,
including any adulterants or dilutants, of 400 grams or more.  The State=s expert testified that Athe aggregate weight of the methamphetamine, including any of its
adulterants and/or dilutants, was 1,093.7 grams, which clearly exceeds 400
grams.@ 
Short v. State, supra at 668. 
The Court of Criminal Appeals held that this unchallenged expert
testimony was legally sufficient to support the conviction.    Short v. State, supra at 668.  The testimony in Short is similar to
White=s testimony in this case.                                 

Appellant
argues that Short does not apply to this case because White testified
that the substance in question included moisture in addition to adulterants and
dilutants.  White neither stated whether
she considered the moisture to be an adulterant or dilutant nor identified how
much moisture was present; however, that testimony was not necessary in this
case.  Appellant was charged with
possession of methamphetamine, including adulterants and dilutants, of 400
grams or more.  White testified that the
aggregate weight of the substance was 4,390 grams.  The State had the burden to show that 400 or more grams of the
substance was methamphetamine, including adulterants and dilutants.  The State met that burden.  It is clear that moisture did not make up
more than 3,990 grams of the substance. 
We overrule appellant=s Issue No. 3.

The
judgment of the trial court is affirmed.

 

W. G. ARNOT, III

CHIEF
JUSTICE

 

August 8, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.