COURT
OF APPEALS

                                                    EIGHTH
DISTRICT OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

BRANDON EDWARDS,                                     )                    No. 
08-00-00551-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                      161st District Court

                                                                              )

THE STATE OF TEXAS,                                     )                   of Ector County, Texas

                                                                              )

Appellee.                           )                           (TC# B-28,045)

 

O P I N I O N

 

Brandon
Edwards appeals his conviction for the offense of manufacturing or possessing
with intent to manufacture more than 400 grams of methamphetamine, enhanced by
two prior felony convictions.  A jury
found Appellant guilty, found the enhancement paragraphs true, and assessed
punishment at imprisonment for a term of forty-five years.  We affirm.

FACTUAL SUMMARY








During
the early morning hours of November 5, 1999, Officer Josh Greggory
of the Odessa Police Department stopped a pickup truck due to a seat belt
violation.  Greggory
approached the driver, Timothy Perry, and obtained his driver=s license and insurance
information.  He arrested Perry for
driving with a suspended driver=s
license.  The passenger, later identified
as Appellant, told Greggory that he owned the truck
but it was registered to his mother. 
Following Perry=s
arrest, Appellant consented to a search of the truck.  Greggory noticed
that the bed of the pickup had a lot of trash in it along with some car parts
and a blue and white ice chest.  Another
officer found a syringe in the glove compartment.  Appellant told the officers that the syringe
belonged to his diabetic mother.

Appellant
initially presented a Texas driver=s
license and identified himself to Greggory as AStance Ren,@ but a second officer who knew
Appellant arrived at the scene and identified him.  Consequently, Greggory
arrested Appellant for false identification.  Greggory and another
officer transported Perry and Appellant to jail.  A third officer, Michael Gerke,
impounded Appellant=s
pickup.  Before leaving, Greggory asked Gerke to look
inside of the ice chest to determine whether it had any alcoholic beverages in
it.  In the ice chest, Gerke found a large pickle jar containing a clear liquid
and some coffee filters.  He also found a
beaker which had lines on it to indicate measurements.  Gerke noted these
items on the impound report as things of value but he did not recognize their
significance.

Mike
Simms, who worked for a wrecker service at the time, went to the scene to
transport Appellant=s truck
to the impound yard.  He had to wait for
the police to finish with their business and move their patrol cars before he
could pick up the truck.  Upon walking up
to the truck, Simms immediately noticed the strong smell of methamphetamine,
which he described as being so strong that he almost Amessed
his pants.@  Simms recognized the odor as methamphetamine
because he Ahad an
eighteen year problem with it.@  He did not mention what he had noticed to
anyone and simply transported the truck to the wrecking yard in Odessa which is
secured by a fence and locked gate. 
Simms recalled that the following afternoon, someone came to the
wrecking yard and got some property out of the truck.








Appellant=s mother, Virgie Worley, testified at
trial on behalf of the State.  Worley
owned the pickup driven by Appellant but he had used it regularly because of
trouble with his own car.  Appellant
called Worley and told her that he had been arrested and her truck had been
impounded.  Worley went to the wrecking
yard to pick it up later that same day. 
Before driving home to Monahans, she stopped
and put oil, gas, and water in the truck because the truck smelled so bad and
she thought Appellant had Aburnt
it up.@  When she found a Aneedle@ in the front of the pickup, she threw
it out the window.  Worley does not have
diabetes and she did not own a blue and white ice chest or any of the items
found in the ice chest.

After
Worley arrived in Monahans, she went to the grocery store.  She put the groceries in the back of the
truck and noticed the blue and white ice chest. 
Upon opening it and seeing the jar with a hose and some coffee filters,
Worley became afraid because the items in it Adidn=t
look right.@  Worley put the ice chest in the trunk of a
car owned by Appellant=s
girlfriend.[1]  The girlfriend=s
car had broken down earlier in the day at the same grocery store and was still
in the parking lot.  Worley then drove
home.  Still concerned, Worley called her
probation officer and told him what she had found.  Juan Rodriguez, Jr., a deputy sheriff, and
her probation officer met her in the parking lot that evening.  Worley opened the trunk and showed them the
ice chest and its contents.  Rodriguez
described the items as smelling like ether. 
After contacting other law enforcement officers, Rodriguez seized the
items.  Subsequent laboratory analysis
revealed that the jars contained approximately 2,114 grams of
methamphetamine.  Latent fingerprints
taken from the jars matched Appellant=s
fingerprints.








Appellant
testified in his own defense.  He falsely
identified himself to Greggory because he knew that
he had an outstanding blue warrant.  He
gave the officer consent to search the truck because he had nothing to
hide.  He denied telling the officers
that his mother was a diabetic. He also denied manufacturing methamphetamine
and insisted he did not know methamphetamine was in the truck.  The jury rejected Appellant=s defense and found him guilty as
alleged in the indictment.  

DENIAL OF COUNSEL=S MOTION TO WITHDRAW

In
Point of Error No. One, Appellant contends that the trial court abused its
discretion in refusing to permit trial counsel to withdraw.  Asserting that his attorney had a conflict of
interest as a result of the  grievance
filed against him, Appellant urges that the denial of the motion to withdraw
results in a violation of his right to counsel guaranteed by the Sixth
Amendment.  When reviewing a trial judge=s ruling on a motion to withdraw, we
apply an abuse of discretion standard.  Green
v. State, 840 S.W.2d 394, 408 (Tex.Crim.App.
1992), cert. denied, 507 U.S. 1020, 113 S.Ct.
1819, 123 L.Ed.2d 449 (1993).  We will
not disturb the trial court=s
decision absent an abuse of discretion.  See
Id.

Appellant
was indicted on March 20, 2000.  The
trial court appointed Jason Leach to represent him.  Leach filed a motion to withdraw on May 31,
2000, alleging that he had been instructed by Appellant to file the motion to
withdraw because he intended to hire counsel. 
Leach further alleged that he could not effectively communicate with
Appellant.  Appellant was unable to
retain counsel and the trial court denied the motion after a hearing.  








Leach
filed a second motion to withdraw on November 22, 2000, less than a week before
trial.  At the hearing on the motion,
Leach informed the court that he could not communicate with Appellant, who was
highly dissatisfied with his representation. 
Leach believed a conflict of interest existed because Appellant had
filed a grievance against him.  He
further informed the court that Appellant wished to represent himself if the
court did not appoint new counsel and he had refused to wear the civilian
clothes counsel had brought for him to wear at trial.  

In
response to questioning by the trial court, Appellant accused Leach of perjury
and suborning perjury.  Appellant also
complained that Leach had only visited him three times in the jail, had refused
to pursue a bond reduction, had not undertaken an adequate investigation of the
facts, had not been prepared for the suppression hearing, and had refused to
pursue Appellant=s
defensive theories.  Appellant confirmed
that he had filed a grievance with the State Bar of Texas alleging that Leach
had not communicated with him or his family. 


Leach
denied that he had only visited Appellant three times and he maintained that he
had communicated not only with Appellant but his family as well.  He had reviewed the State=s file and had interviewed witnesses in
preparation for trial.  Contrary to
Appellant=s version
of what occurred at the suppression hearing, Leach explained that he could not
proceed with the motion to suppress due to a lack of standing because Appellant
refused to admit an ownership interest in the truck. Leach=s insistence that Appellant had to
claim an ownership interest in the truck in order to file the motion to
suppress is the basis of Appellant=s
accusation that Leach had asked him to perjure himself.  Counsel had not initially pursued a bond
reduction because Appellant was held pursuant to a blue warrant so release on
bond was simply not an available option. 
Later, however, the blue warrant was released and counsel could have
sought a bond reduction but had not done so. 









After
hearing all of this evidence, the trial judge informed Appellant of his
confidence in Leach=s ability
and observed that Appellant probably would not be happy with any attorney
appointed to represent him.  Finding that
Appellant=s
allegations against Leach were groundless and that an actual conflict of
interest did not exist under these facts, the court denied the motion to
withdraw.  At this point and despite the
court=s stern
admonishments, Appellant informed the court that he wished to be tried in jail
clothes.  Further, he insisted that he
would rather represent himself than continue with Leach as his attorney.  The court admonished Appellant at length
regarding self-representation but Appellant persisted in his desire to
represent himself.  The court requested
that Leach remain in the courtroom in the event Appellant changed his
mind.  Appellant represented himself
during voir dire but later requested that Leach represent
him through the remainder of trial.              The right to counsel afforded an
indigent defendant by the Sixth Amendment may not be manipulated in such a
manner as to obstruct the orderly procedure in the courts or to interfere with
the fair administration of justice.  See
Hubbard v. State, 739 S.W.2d 341, 344 (Tex.Crim.App.
1987).  A defendant does not have the
right to his own choice of appointed counsel, and unless he waives his right to
counsel and chooses to represent himself or shows adequate reason for the
appointment of new counsel, he must accept the counsel appointed by the
court.  Garner v. State, 864
S.W.2d 92, 98 (Tex.App.--Houston [1st Dist.] 1993,
pet. ref=d).  A trial court is under no duty to search until
it finds an attorney agreeable to the defendant.  Id. 
However, there are circumstances in which a defendant may, upon a proper
showing, be entitled to a change of counsel. 
Id.  A defendant must bring
the matter to the trial court=s
attention and must carry the burden of proving he is entitled to new
counsel.  Malcolm v. State, 628
S.W.2d 790, 791 (Tex.Crim.App. 1982); Webb v.
State, 533 S.W.2d 780, 784 n.3 (Tex.Crim.App.
1976).








Ineffective
assistance of counsel may result from an attorney=s
conflict of interest.  Strickland v.
Washington, 466 U.S. 668, 692, 104 S.Ct. 2052,
2067, 80 L.Ed.2d 674 (1984).  When a
possible conflict of interest is brought to the trial court=s attention, as in this case, the court
must take adequate steps to ascertain whether the risk of the conflict is too
remote to warrant remedial action.  Dunn
v. State, 819 S.W.2d 510, 519 (Tex.Crim.App.
1991).  The defendant=s filing of a grievance or other legal
proceeding against appointed counsel does not create an actual conflict of
interest per se even though this may result in trial counsel and
the defendant being adversaries in other legal proceedings.  See Dunn, 819 S.W.2d at 519 (defendant
filed legal malpractice action); Perry v. State, 464 S.W.2d 660, 664 (Tex.Crim.App.), cert. denied, 404 U.S. 953, 92 S.Ct. 324, 30 L.Ed.2d 270 (1971)(lawsuit under Civil Rights
Act); Garner, 864 S.W.2d at 99 (complaint letter to bar
association).  An actual conflict of
interest exists if counsel is required to choose between advancing his own
client=s
interests in a fair trial or advancing other interests, including his own, to
the detriment of his client=s
interest.  See Ex parte
Morrow, 952 S.W.2d 530, 538 (Tex.Crim.App. 1997),
cert. denied, 525 U.S. 810, 119 S.Ct. 40, 142
L.Ed.2d 31 (1998).  In order to demonstrate
that a conflict of interest violated his right to reasonably effective
assistance of counsel, a defendant must show that (1)  defense counsel was actively representing
conflicting interests and (2)  the
conflict had an adverse effect on specific instances of counsel=s performance.  Cuyler v.
Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64
L.Ed.2d 333 (1980); Morrow, 952 S.W.2d at 538.








The
grievance is based upon the same complaints aired by Appellant at the
hearing.  These complaints all concern
Leach=s alleged
failure to communicate with Appellant and his refusal to conduct the
investigation and defense of the case in the manner desired by Appellant.  The trial judge heard substantial evidence of
the efforts made by Leach on Appellant=s
behalf.  The trial court correctly
concluded that an actual conflict of interest did not exist due to the filing
of the grievance.  On appeal, Appellant
maintains that a conflict of interest automatically exists since he accused his
attorney of committing two crimes, perjury and subornation of perjury.  The only evidence offered at the hearing on
this subject demonstrated that the accusations arose out of counsel=s discussions with Appellant that he
must claim an interest in the vehicle in order to have standing for purposes of
the motion to suppress.  This does not
establish any basis for the accusations. 
If there is any other basis for the accusations, it does not appear in
the record.  While we appreciate trial
counsel=s plight
in dealing with a client insistent on making unsupported accusations of
wrongdoing, we are also concerned, as was the trial court, with a defendant who
makes these types of allegations in order to manipulate the trial court and his
right to counsel.  Under these facts, we
find that an actual conflict of interest does not exist.  

Finally,
Appellant argues that the complaints he voiced about his attorney during voir dire also resulted in a conflict of interest.  He does not explain how these complaints
caused counsel to represent conflicting interests.  Even if Appellant had established the
existence of a conflict of interest at the hearing, there is no evidence to
show that it had an adverse effect on counsel=s
performance at trial.  Finding no abuse
of discretion, we overrule Point of Error No. One.

SELF-REPRESENTATION








In
Point of Error No. Two, Appellant argues that the trial court erred in
permitting him to represent himself during voir
dire.  The Sixth Amendment guarantees
defendants the right to assistance of counsel in criminal cases.  See Faretta v.
California, 422 U.S. 806, 807, 95 S.Ct. 2525, 45
L.Ed.2d 562 (1975); Cain v. State, 976 S.W.2d 228, 235 (Tex.App.--San Antonio 1998, no pet.).  Implied in the right to counsel and other
Sixth Amendment protections is a right to self-representation.  See Faretta,
422 U.S. at 820, 95 S.Ct. at 2533-34.  A waiver of counsel must be made competently,
knowingly and intelligently, and voluntarily. 
Collier v. State, 959 S.W.2d 621, 625‑26 (Tex.Crim.App. 1997), citing Godinez
v. Moran, 509 U.S. 389, 400‑01, 113 S.Ct.
2680, 2687, 125 L.Ed.2d 321 (1993).  The
decision to waive counsel and proceed pro se is made knowingly and
intelligently if it is made with a full understanding of the right to counsel,
which is being abandoned, as well as the dangers and disadvantages of self‑representation.  Collier, 959 S.W.2d at 626.  A waiver of the right to counsel will not be
lightly inferred, and the courts will indulge every reasonable presumption
against the validity of such a waiver.  Geeslin v. State, 600 S.W.2d 309, 313 (Tex.Crim.App. [Panel Op.] 1980).

As
already detailed, the trial court engaged in a lengthy discussion with
Appellant about the dangers and disadvantages of self-representation and even
went so far as to tell Appellant he should not represent himself.  Although the court did not, as Appellant
points out, question him about his educational background and legal training
until after the venire was seated, the court did so before voir
dire began.  Despite the extensive
warnings and admonishments given, Appellant finds fault with the trial court=s failure to determine whether
Appellant had a firm command of the facts and legal issues, including the
nature of the charges against him and the range of punishment.  There is no requirement that a trial court
follow Aformulaic
questioning@ or a
particular Ascript@ to assure itself that an accused who
has asserted his right to self‑representation does so with eyes
open.  Burgess v. State, 816
S.W.2d 424, 428 (Tex.Crim.App. 1991).  It is required only that the record contain
proper admonishments concerning pro se representation and any necessary
inquiries of the defendant so that the trial court may make an assessment of
his knowing exercise of the right to defend himself.  Id. 
The trial judge more than adequately warned Appellant of the dangers and
disadvantages of self-representation, and he had a sufficient basis for
determining that Appellant made his decision with full knowledge of the right
to counsel.  Point of Error No. Two is
overruled.

LEGAL SUFFICIENCY








In
Point of Error No. Three, Appellant challenges the legal sufficiency of the
evidence to prove that he manufactured or possessed with intent to manufacture
more than 400 grams of methamphetamine. 
Dennis Hambrick, a chemist with the Department
of Public Safety, testified regarding the DPS lab analysis of the liquid and
powdery substances recovered from various containers in the blue and white ice
chest.  The lab determined that the
liquid substance was methamphetamine, which weighed 1.93 kilograms or 1,930
grams, including dilutants and adulterants.  The powdered substance, weighing a total of
184.38 grams, was also found to be methamphetamine.  The lab did not perform any quantitation of the liquid methamphetamine because it
contained an interfering contaminant. 
According to Hambrick, the contaminant could
be considered an adulterant or dilutant but he did
not run any additional tests to determine its nature.  He further stated that anything found mixed
with a controlled substance could be considered an adulterant or dilutant.  








Drawing
a distinction between a contaminant, and adulterants or dilutants
which increase the weight or bulk of the controlled substance, Appellant argues
that a contaminant may not be included in the calculation of weight unless it
is further identified as an adulterant or dilutant.  The jury determined that Appellant, as
charged in the indictment, manufactured and possessed with intent to
manufacture more than 400 grams of methamphetamine, by aggregate weight and
including any adulterants and dilutants.  Under the Texas Health and Safety Code, Aadulterant or dilutant@ means any material that increases the
bulk or quantity of a controlled substance, regardless of its effect on the
chemical activity of the controlled substance. 
Tex.Health&Safety Code Ann. ' 481.002(49)
(Vernon Pamph. 2002). 
The State is no longer required to prove that the added adulterants or dilutants did not affect the chemical activity of the
controlled substance.  Hines v. State,
976 S.W.2d 912, 913 (Tex.App.-‑Beaumont 1998,
no pet.); Williams v. State, 936 S.W.2d 399, 405‑06 (Tex.App.‑‑Fort Worth 1996, pet. ref=d). 
Because the Health and Safety Code now defines adulterants and dilutants as substances that increase the bulk or quantity
of a controlled substance, testimony that the substances are adulterants and dilutants constitutes proof that they were added to
increase bulk and quantity.  Hines,
976 S.W.2d at 913; Collins v. State, 969 S.W.2d 114, 117 (Tex.App.‑‑Texarkana 1998, pet. ref=d). 
The current version of section 481.002(49) omits any requirement of
intent to increase the bulk or quantity of the final product and negates the
requirement that the added remainder (adulterants and/or dilutants)
has not affected the chemical activity of the named illegal substance, thus
eliminating the requirements that the State prove (1) intent to increase the
bulk or quantity, and (2) the adulterants or dilutants
have not affected the chemical activity of the named substance.  Hines, 976 S.W.2d at 913; Warren v.
State, 971 S.W.2d 656, 660 (Tex.App.‑‑Dallas
1998, no pet.).  Hambrick=s testimony that the methamphetamine,
including adulterants and dilutants, weighed more
than 400 grams, and that the term adulterant or dilutant
includes contaminants, is sufficient to support the jury=s
finding of guilt.  Point of Error No.
Three is overruled.

FACTUAL SUFFICIENCY








In
Point of Error No. Four, Appellant challenges the factual sufficiency of the
evidence to support the element addressed in his third point.  In reviewing the factual sufficiency of the
evidence to support a conviction, we are to view all the evidence in a neutral light,
favoring neither party.  Johnson v.
State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). 
Evidence is factually insufficient if it is so weak that it would be
clearly wrong and manifestly unjust to allow the verdict to stand, or the
finding of guilt is against the great weight and preponderance of the available
evidence.  Johnson, 23 S.W.3d at
11.  Therefore, the question we must
consider in conducting a factual sufficiency review is whether a neutral review
of all the evidence, both for and against the finding, demonstrates that the
proof of guilt is so obviously weak as to undermine confidence in the fact
finder=s
determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.  See
id.  In performing this review, we
are to give due deference to the fact finder=s
determinations.  See id. at 8‑9;
Clewis, 922 S.W.2d at 136.  Consequently, we may find the evidence
factually insufficient only where necessary to prevent a manifest injustice
from occurring.  See Johnson, 23
S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1997).

Appellant
did not present any expert testimony on the subject but instead argues that the
State=s proof
is so weak that it would be manifestly unjust to allow his conviction to
stand.  Although Hambrick
initially drew a distinction between a contaminant and adulterants or dilutants, he later testified, after being reminded of the
definition found in the Health and Safety Code, that a contaminant is also an
adulterant or dilutant.  When his testimony is read as a whole, there
is sufficient evidence to show that the methamphetamine, including adulterants
and dilutants, weighed more evidence than 400
grams.  Point of Error No. Four is
overruled.  Having overruled each point
of error, we affirm the judgment of the trial court.

 

 

August 15, 2002

                                                                        


ANN CRAWFORD McCLURE, Justice

 

Before Panel
No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)

 











[1]  Worley had a
key to the trunk.