# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00487-CR

**Damon Henry Goforth, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT
### NO. A-00-0768-S, HONORABLE BEN WOODWARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Damon Henry Goforth appeals his conviction for possession of a controlled substance, to wit: methamphetamine, in an amount of one gram or more but less than four grams. *See* Tex. Health & Safety Code Ann. §§ 481.102(b), .115(c) (West 2003). The jury found appellant guilty. The trial court, finding that the allegation in the indictment charging a prior conviction for possession of marihuana was true, assessed punishment at eleven years' imprisonment.

### Points of Error

Appellant advances six points of error. In his first two points, appellant challenges the legal and factual sufficiency of the evidence, contending that proof of the weight of the methamphetamine alleged in the indictment was insufficient to support the jury's verdict. In the third point of error, appellant complains that the trial court's comment during jury argument was on

the weight of the evidence and harmful to him. In points of error four, five, and six, appellant asserts that the trial court erred in admitting into evidence, over objection, appellant's statement to Officer Howard Miller that he (appellant) had just gotten off parole for marihuana. Appellant contends that the trial court's rulings on appellant's statement were in violation of Rules 401, 403, and 404(b) of the Texas Rules of Evidence and because the evidence "was general character evidence to which the defense had not raised an issue." We will affirm the judgment of conviction.

**Facts**

On June 5, 2000, San Angelo Police Officer Howard Miller stopped to talk to a man he observed walking on the wrong side of the road[1] in the "unit block" of South Jackson Street. Miller identified the man as appellant and informed him of the violation. Miller observed that appellant was pacing back and forth, was sweating, "hyper," nervous, and "jaw biting." The twenty-one-year veteran police officer was of the opinion that appellant was under the influence of a stimulant. At the officer's request, appellant produced his identification. Miller conducted an outstanding warrant check by radio and found that there were none. In response to Miller's question as to whether appellant had been "in trouble," appellant stated that he had just gotten off parole for possession of marihuana. Miller inquired if appellant had any narcotics on his person and appellant answered "no." Appellant reached into his right front pants pocket and removed his hand quickly. He then reached into his left front pocket and began selectively removing items. Miller asked if appellant could turn his pocket inside out. At this point, appellant hung his head and told Miller that he had "dope." When Miller asked what kind, appellant said "speed," which Miller testified was a

_____

[1] *See* Tex. Transp. Code Ann. § 552.006 (West 1999).

2

common street term for methamphetamine or amphetamine.  Miller handcuffed appellant and, with appellant's consent, retrieved from appellant's left front pocket a matchbox.  Inside this single receptacle were two plastic baggies containing a tan hard rock-looking substance.

In response to Miller's call, narcotic officers John McGuire and Mickey Jones arrived on the scene and talked to appellant.  Both officers testified that in their opinion appellant was under the influence of methamphetamine, describing the actions of people who have taken that particular stimulant or controlled substance.

The record shows that a chemical field test was performed on the substance taken from appellant.  The substance was then submitted to the Texas Department of Public Safety at Abilene.  The chain of custody was established.  Criminalist William Todsen with the Texas Department of Public Safety crime laboratory testified that three tests had been performed on the substance submitted and that these lab reports showed that the substance was methamphetamine weighing 1.12 grams including any adulterants and diluants.  The thirty-four-year-old appellant testified that he was a schizophrenic and had had mental health problems since he overdosed on methamphetamine and L.S.D. when he was twenty years old.  He added that he took prolixin as a medication to keep from being "hyper"; that on June 5, 2000, he had not taken his medication for two months; and that when he is not taking his medication he sometimes becomes "spacey," hyperactive and "his jaw grows crooked."  Appellant stated that he thought he had "dope"—"speed" in his pocket on June 5, 2000.  "They"[2] told him it was methamphetamine.  When shown the matchbox, the two plastic baggies and the substance which had been introduced into evidence and

---

[2] "They" apparently referred to the individuals from whom appellant had obtained the substance.

identified as methamphetamine, appellant stated: "It looks like the stuff I had in my pocket," and "That's what I had in my pocket." Dr. Charles Bray, a psychiatrist, and appellant's father testified as to appellant's mental health problems.

## Legal Sufficiency

In his first point of error, appellant challenges the legal sufficiency of the evidence to support his conviction. Appellant claims that the proof is insufficient to sustain the allegation in the indictment that the weight of the methamphetamine was more than one gram but less than four grams. Appellant hinges his argument on the fact that the contents of both plastic baggies were combined or mixed together before the weight of the methamphetamine, including adulterants and dilutants, was determined.

In analyzing whether the evidence is legally sufficient to support the judgment, we view the evidence in the light most favorable to the judgment, asking whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996).

The evidence, viewed in this light, and all reasonable inferences drawn therefrom, are evaluated in this review. *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). A reviewing court must consider all the evidence, rightly or wrongly admitted, which the trier of fact was permitted to consider. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The standard of review is the same for both direct and circumstantial evidence. *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

4

The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given the testimony; and may accept or reject all or any witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). Reconciliation of evidentiary conflict is solely the function of the trier of fact. *Miranda v. State*, 813 S.W.2d 724, 733-34 (Tex. App.—San Antonio 1991, pet. ref'd). Moreover, the evidence is not rendered insufficient merely because the defendant presented a different version of the events. *Turro v. State*, 867 S.W.2d 43, 47-48 (Tex. Crim. App. 1993).

In the instant case, it is undisputed that the substance in question was found in appellant's possession. Appellant stated it was "speed" (methamphetamine). There was evidence that appellant was under the influence of methamphetamine at the time. The substance was in two plastic baggies found in a single receptacle—a matchbox. The substance in both baggies was a tan colored rock-like substance, apparently homogeneous in nature. Following a chemical field test, the substance was submitted to the laboratory at the Texas Department of Public Safety. The two presumptive tests, the Marquis and S.N.P. analysis, showed that the substance in each baggie was methamphetamine. The substance in each baggie was combined and the gas chromatography-mass spectrometry test, a confirmatory analysis, was performed. The test showed that mixture was methamphetamine and weighed 1.12 grams.

Appellant contends that the evidence is insufficient because the substance in each baggie was not separately weighed and individually tested prior to the gas chromatography-mass spectrometry analysis. Appellant argues that "the only professionally supportable conclusion is that there was some methamphetamine of unknown weight." Appellant contends that "without the

5

necessary evidence of weight," he was proven guilty only of a lesser included offense of possession of a controlled substance less than one gram. Without the submission of a lesser included offense to the jury, appellant urges that he is entitled to an acquittal.

The purity of the methamphetamine in the substance was not established. Neither was the amount of adulterants and dilutants determined. The criminalist testified 1.12 grams weight included any adulterants and dilutants "that might have been present."

An adulterant or dilutant is defined as any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance. Tex. Health & Safety Code Ann. § 481.002(49) (West Supp. 2003). The State must prove that a controlled substance plus adulterants and dilutants weigh at least as much as the minimum weight alleged in the indictment. *Reeves v. Sate*, 806 S.W.2d 540, 542 (Tex. Crim. App. 1990). The State is no longer required to prove that the added adulterants and dilutants did not affect the chemical activity of a controlled substance. *Hines v. State*, 976 S.W.2d 912, 913 (Tex. App.—Beaumont 1998, no pet.); *Warren v. State*, 971 S.W.2d 656, 660 (Tex. App.—Dallas 1998, no pet.); *Williams v. State*, 936 S.W.2d 399, 405-06 (Tex. App.—Fort Worth 1996, pet. ref'd). "Because the Health and Safety Code now defines adulterants and dilutants as substances that increase the bulk or quantity of a controlled substance, testimony that the substances are adulterants and dilutants constitute proof that they were added to increase bulk and quantity of the [controlled substance]." *Collins v. State*, 969 S.W.2d 114, 117 (Tex. App.—Texarkana 1998, pet. ref'd).

The direct and circumstantial evidence, when viewed in the light most favorable to the jury's verdict, is sufficient for us to conclude that a rational trier of fact could have found beyond

6

a reasonable doubt all of the essential elements of the offense charged, including the elements that

appellant possessed methamphetamine in an amount of more than one gram but less that four grams.

*See Hines*, 976 S.W.2d at 913. The first point of error is overruled.[3]

---

[3] Appellant relies upon *Melton v. State*, 85 S.W.3d 442 (Tex. App.—Austin 2001, pet. granted), a random sampling case which is distinguishable from the facts in the instant case. In *Melton*, the defendant was charged with possession of four or more but less than two hundred grams of cocaine. A plastic baggie found on the defendant's person contained thirty-five to forty rocks of what appeared to be crack cocaine. A field test revealed the presence of cocaine. The Texas Department of Public Safety chemist testified that the evidence in the baggie was crack cocaine and weighed 5.77 grams, but admitted that he did not test every rock in the baggie, only an unspecified number. The *Melton* court wrote:

> The legislature has established an increasing penalty scale based solely on the amount of controlled substance possessed by an accused. We do not believe it is unreasonable for the State, if it desires a penalty greater than the minimum, to test and prove the substance possessed is a controlled substance in an amount within the range of punishment the State is seeking to have imposed . . . . Some of the thirty-five to forty items in the bags may not have contained any cocaine; if a rock is composed entirely of noncocaine, then the noncocaine substances are not adulterating or diluting cocaine, and their weight cannot be added to the aggregate weight of cocaine.

*Id.* at 444-45.

The *Melton* court took note of the plurality opinion in *Gabriel v. State*, 900 S.W.2d 721, 722 (Tex. Crim. App. 1995), that the manner of testing a substance by the thoroughness of the random sampling testing goes to the weight of the evidence regarding the amount of the substance, but declined to follow the plurality opinion as it is not binding authority. *See State v. Hardy*, 963 S.W.2d 516, 519 (Tex. Crim. App. 1997).

The *Melton* opinion also took note that three judges concurred in *Gabriel*, concluding under the facts of that case that circumstantial, not necessarily scientific, evidence could allow the jury to "'infer' that all similarly situated baggies contained the same substance, and the substance was cocaine." Before and after *Melton*, other courts of appeals have followed *Gabriel*. *See, e.g.*, *Zane v. State*, 84 S.W.3d 733, 741 (Tex. App.—Houston [1st Dist.] 2002, pet. granted); *Henson v. State*, 915 S.W.2d 186, 192 (Tex. App.—Corpus Christi 1996, no pet.) (manner of testing a substance by random sampling goes only to weight of evidence jury may give to tested substances in determining that untested substance is the same as tested substance). Under any circumstances, these random

**Factual Sufficiency**

In point of error two, appellant challenges the factual sufficiency of the evidence. A review of the factual sufficiency of the evidence begins with the presumption that the evidence supporting the judgment is legally sufficient. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In such a review, we consider the evidence without employing the prism of "in the light most favorable to the verdict" as required in cases of complaints of legal insufficiency. *Id*. at 129. A reviewing court must consider all the evidence impartially, comparing evidence that tends to prove the existence of a disputed fact or facts with evidence that tends to disprove that fact or those facts. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). The verdict or the judgment is to be set aside only when the factual finding is against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129.

In a clarification of the standard of review involved, the Court of Criminal Appeals made clear that the *Clewis* criminal factual sufficiency review encompasses both formulations utilized in civil jurisprudence. Thus, in conducting a *Clewis* sufficiency review of the elements of a criminal conviction, an appellate court must ask whether a neutral review of all the evidence, both for or against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine the confidence in the jury's determination, or the proof of guilt, although sufficient taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). It must be remembered, however, that the trier of fact is the sole judge of the weight and credibility

---

sampling decisions are not controlling in the instant case where there was no random sampling. Appellant's reliance on *Melton* is misplaced.

8

of the testimony. *Santellan*, 939 S.W.2d at 164. One principle of the factual sufficiency analysis is deference to the findings of the jury or other fact finder. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

In advancing his factual sufficiency argument, appellant points out again that two baggies with similar appearing substances found in a matchbox were mixed together before being subjected to the conclusive gas chromatography-mass spectrometry test. "Hence, it is unknowable whether the methamphetamine found by the conclusive gas chromatography-mas spectrometry test came from one or both of the two seized packs. And, since there is no evidence whatsoever in the record as to the weight of each pack separately, it is impossible to say whether, if methamphetamine was in fact present only in one pack, what the weight of the proven controlled substance would then be."

The foregoing is the major thrust of appellant's argument. A neutral review of all the evidence does not show that proof of guilt of the elements of the criminal conviction is so obviously weak as to undermine the confidence in the jury's verdict. The verdict is not so contrary to the over-whelming weight of the evidence to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 135. The second point of error is overruled.

**Comment on the Weight of the Evidence**

In his third point of error, appellant claims that the "trial judge made an improper comment on the weight of the evidence during defense counsel's final argument at the guilt-innocence phase of the trial, which error was harmful."

Article 38.05 provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979).

The trial court must maintain an attitude of impartiality throughout the trial. The language and the conduct of the trial court have a special and peculiar weight with the jury. *See Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.—Dallas 1994, no pet.). A trial court's comment constitutes reversible error if such comment is either reasonably calculated to benefit the State or to prejudice a defendant's right to a fair and impartial trial. *Becknell v. State*, 720 S.W.2d 526, 531 (Tex. Crim. App. 1986); *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex. Crim. App. 1983); *Gonzales v. State*, 2 S.W.3d 600, 607 (Tex. App.—Texarkana 1999, pet. ref'd).

In support of his contention, appellant calls our attention to the following portion of the record reflecting his counsel's jury argument:

> The person who needs to be asked a question here today is Detective McGuire. How do you expect us, when you can't follow a rule as simple as that, to think that your memory 18 months later of something you didn't put down in your offense report because you --
>
> MS. WILLIAMS:   Objection. That's not --
>
> MR. JONES:         -- because you did not --
>
> MS. WILLIAMS:   Objection.

10

THE COURT:        Okay, Mr. Jones.  Your objection?

MS. WILLIAMS:     That is not in evidence before this Jury.  Mr. Jones is attempting
                  to testify to matters not in evidence before this Jury.

THE COURT:        Stick within the evidence that has been presented, during your
                  argument, please, sir.

MR. JONES:        Your Honor, respectfully, I'm going to object that that was a
                  comment on the weight of the evidence.

THE COURT:        Objection noted and denied.  It was not a comment on the
                  evidence.  I'm just instructing you to argue the evidence.

MR. JONES:        Your Honor, I'm -- respectfully, I must have a ruling on my
                  objection.

THE COURT:        Overruled.

MR. JONES:        Thank you, Your Honor.

We heard testimony from that witness stand.  I asked Detective McGuire a specific
question: "Did you write a report of this incident?"  And he said, "No, I didn't."

And for that reason we know, as I said a moment ago, he didn't put it in his offense
report because he doesn't have an offense report.  He expects you to rely on an 18-
month-old memory when he would not comply with the law regarding how he should
take that statement.  Now, I may come back to that in a moment, but let's change
topics for a moment.


        It is obvious from the excerpt above that appellant got before the jury, without

objection, what apparently the complained-of ruling may have prevented temporarily.  It is unclear

from the excerpt alone or even counsel's earlier argument just what portion of McGuire's testimony

was involved.  Apparently, appellant's counsel was attacking McGuire's rebuttal testimony

impeaching appellant's testimony denying that he made a statement to Officers McGuire and Jones

about what had transpired between Officer Miller and himself at the time of the stop.  On cross-

11

examination, after McGuire's rebuttal testimony reciting appellant's statement, counsel received negative answers when he asked McGuire if McGuire had recorded the oral statement, preserved it by "in-car video," reduced it to writing, or made an offense report.

Appellant does not show that the trial court's remarks or rulings were a comment on the weight of the evidence or were calculated to convey its opinion of the case. In a multifarious manner, appellant describes three other trial court rulings in an attempt to show the trial court's favoritism to the prosecution. The State, in its brief, offers to match the list with adverse rulings against the State.

Counsel may in jury argument properly summarize the evidence and draw reasonable deductions therefrom, *Todd v. State*, 598 S.W.2d 286, 297 (Tex. Crim. App. 1980), but normally must confine their argument to the evidence introduced during the trial and cannot argue outside of the record. *See* 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 37.21 (West 2001). Trial courts are frequently called upon to respond to objections during jury argument that opposing counsel's argument is beyond the pale—outside the record. That is what occurred in the instant case. We conclude that the trial court's remarks were not a comment on the weight of the evidence, nor did they result in a benefit to the State or prejudice or harm appellant's right to a fair and impartial trial. The third point of error is overruled.

**The Parole Statement**

In points of error four, five and six, appellant contends that the trial court erred in admitting appellant's oral statement to Officer Miller that appellant had just gotten off parole for possession of marihuana. Appellant urges that the admission of the evidence was in violation of

12

Rules 401, 403, and 404(b) of the Texas Rules of Evidence and "inadmissible because it was general character evidence as to which the defense had not raised on issue."

The complained-of testimony was elicited during the direct examination of Officer Miller who had stopped appellant as earlier described. Appellant appeared to Miller to be under the influence of a stimulant, was sweating, was nervous, and pacing back and forth. Miller had obtained identification and checked on outstanding warrants. It was at this time that appellant told Miller that he had just gotten off parol for possession of marihuana.

Despite any objections, such evidence appears admissible as same transaction contextual evidence. *See Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993); *Mayes v. State*, 876 S.W.2d 79, 86-87 (Tex. Crim. App. 1991); *see also Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993). Evidence of acts, words, and conduct of a defendant at the time of his arrest and the time of the commission of the offense is same transaction contextual evidence. *Rogers*, 853 S.W.2d at 33 & n.6; *see Duncantell v. State*, 563 S.W.2d 252, 254 (Tex. Crim. App. 1978) (events do not occur in a vacuum). We need not decide these points on this basis.

On cross-examination of Miller, appellant's counsel elicited the same parole statement. Further, appellant in his testimony, both on direct and cross-examination, related the parole statement without objection. Moreover, appellant independently testified that he had been convicted for possession of marihuana, detailed how much time he served in county jail and in prison, and that he had completed his parole prior to the instant offense.

> Our rule, therefore, is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. This rule applies whether the other evidence was

13

introduced by the defendant or the State. *See, e.g.*, *Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993); *Stoker v. State*, 788 S.W.2d 1, 12 (Tex. Crim. App. 1989), *cert. denied,* 498 U.S. 951, 111 S. Ct. 371, 112 L. Ed. 2d 333 (1990).  This rule has never been otherwise as far as we know.

*Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

If there was error, appellant has waived it.  There is no need for a harm analysis.

Points of error four, five, and six are overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Kidd, Patterson and Onion[*]

Affirmed

Filed:  June 12, 2003

Do Not Publish

---

[*] Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).